MRS. W. M. HODGES v. CITY OF CHARLOTTE (ORIGINAL PARTY DEFEND-ANT), AND HERMAN BLACK (ADDITIONAL PARTY DEFENDANT).

(Filed 1 February, 1939.)

1. **Municipal Corporations § 12—Ordinarily, city is not liable for torts committed in discharge of governmental function.**

A municipality is not liable for torts committed by its officers and agents in the exercise of its police power or its judicial, discretionary, or legislative authority, in the absence of statutory provisions subjecting it to liability, but it may be held liable for torts committed by its officers and agents in the exercise of its corporate character.

2. **Same—Maintenance of traffic signals by municipality is in exercise of discretionary governmental function.**

The installation and maintenance of traffic lights by a municipality under authority of statute, C. S., 2787 (11), (31), is in the interest of the public safety in the exercise of the police power, and is a discretionary governmental function, the signals being in effect a substitute for a police-man in regulating traffic in the use of the streets, and the city may not be held liable for a tort committed by its agent while discharging his duty in the maintenance of the traffic signals.

3. **Same—Repair of municipal traffic signal is in discharge of governmental function.**

The evidence disclosed that the individual defendant was employed in the traffic signal division of defendant municipality, that while driving a car used exclusively by his division of the city government, to repair a municipal traffic signal, in response to a call from the police department, he struck and injured plaintiff. *Held:* Defendant municipality's motion to nonsuit was properly granted, since its employee was engaged in the discharge of a duty necessarily incident to the governmental function of maintaining the traffic light, and plaintiff's contention that even though the installation and maintenance of a traffic light signal may be a governmental function, repairing the system is a proprietary or corporate function, is untenable.

4. **Same—Evidence held to disclose that city employee was engaged solely in discharge of duty incident to governmental function of the city.**

The evidence disclosed that defendant municipality's employee was on his way to install a bulb in a traffic light at the time of the injury to plaintiff. The employee testified that had he seen a defect in the street while so engaged he would have felt it his duty to report same to the proper city department under general directions of the city manager. *Held:* The evidence discloses that at the time of injury the employee was engaged solely in performing a specific duty incident to a governmental function of the city, and plaintiff's contention that he was engaged also in inspecting the streets for the repair department is untenable, since a city employee may be engaged at one time in a governmental function and at another time in a private or corporate function of the city.

BARNHILL, J., concurring.

CLARKSON, J., dissenting.

24—214

APPEAL by plaintiff from *Armstrong, J.,* at 2 May, 1938, Regular Term of MECKLENBURG.

Civil action for recovery of damages resulting from alleged actionable negligence.

Plaintiff alleges that on the morning of 18 December, 1934, while she was walking across E. Trade Street in the city of Charlotte, immediately west of the intersection of that street with Myers Street, she was stricken and injured by an automobile truck of the city of Charlotte negligently operated, by the defendant Herman Black, in the manner specified and in furtherance of the business of the city of Charlotte, but not in the exercise of a governmental function.

Defendants admit that the plaintiff was stricken by the truck of the defendant city of Charlotte, while being operated by defendant Black, but aver that the truck was being operated in the exercise of a governmental function. The defendant Herman Black, who was not served with summons until 25 March, 1938, pleads the three-year statute of limitation.

With respect to the operation and purpose of operating the truck, plaintiff offered testimony of defendant Black on adverse examination in substance as follows: Black was an employee of the city in the traffic signal division . . . engaged in fixing signal lights and installing traffic signs and in the general maintenance of the safety zones. In that department there were four employees, three permanent and one temporary. All their work is in connection with signal lights, traffic signs and the maintenance of white lines. They work every day testing signal lights that are reported out of fix. There are approximately sixty signal lights in the city. These are not permanent fixtures. They are not changed at any specified times. They last for years, but the devices that run and control them get out of order.

The city truck which Black was operating on the occasion in question is used when fixing signal lights and to carry equipment to where the employees in the traffic signal division are at work. The truck is not used for any other purposes. It is used in all time service only by the employees of that department.

On the morning in question the desk sergeant of the city police department, from which calls were made to the traffic signal division, telephoned to Black, at his home, and where he kept the truck at that time, to go to College and Trade Streets to fix a light. In response to the call Black was on his way from his home to the point named, when the plaintiff was injured. He was going to do a specific job, to install a bulb in the traffic light at College and Trade Streets which regulated traffic in that part of the city. This was his sole duty at the time.

If, however, while on this trip, Black had seen a defective place in the street or in connection with the waterworks which he thought needed

repairs, he would have considered it his duty to report the defect to the department having supervision of the streets or of the waterworks, as the case might be. A letter from the city manager so directed generally. The traffic signal division is a separate department of the city government.

From judgment as of nonsuit, plaintiff appeals to Supreme Court and assigns error.

*G. T. Carswell and Joe W. Ervin for plaintiff, appellant.*
*J. M. Scarborough and B. M. Boyd for defendants, appellees.*

WINBORNE, J. The plaintiff, in brief filed in this Court, admits that, upon the plea of statute of limitations, the action is barred as to defendant Black, and that judgment as of nonsuit in so far as it relates to him is proper. But, as to defendant city of Charlotte, plaintiff presses challenge to correctness of judgment as of nonsuit.

The plaintiff contends that the defendant city, acting through its employee and codefendant Black, in the operation of the truck in question on a mission to repair a traffic light, was engaged in a private or proprietary function. On the other hand, the defendant city contends that while so acting and at the time and on the mission in question it was engaged in the exercise of a governmental function.

It is conceded that, if the contention of the city be correct, there is no error in the judgment below.

The decisions of this Court uniformly hold that, in the absence of some statute which subjects them to liability therefor, cities, when acting in their corporate character, or in the exercise of powers for their own advantage, may be liable for the negligent acts of their officers and agents; but when acting in the exercise of police power, or judicial, discretionary, or legislative authority, conferred by their charters or by statute, and when discharging a duty imposed solely for the public benefit, they are not liable for the tortious acts of their officers or agents. *Hill v. Charlotte,* 72 N. C., 55; *McIlhenny v. Wilmington,* 127 N. C., 146, 37 S. E., 187; *Harrington v. Greenville,* 159 N. C., 632, 75 S. E., 849; *Snider v. High Point,* 168 N. C., 608, 85 S. E., 15; *James v. Charlotte,* 183 N. C., 630, 112 S. E., 423; *Cathey v. Charlotte,* 197 N. C., 309, 148 S. E., 426; *Broome v. Charlotte,* 208 N. C., 729, 182 S. E., 325; *Lewis v. Hunter,* 212 N. C., 504, 193 S. E., 814, and numerous other cases.

This determinative question, therefore, arises: Is the installing and maintaining of traffic light signal system in and by a city, in the exercise of governmental function, or in proprietary or corporate capacity? We are of opinion that it is in the exercise of a discretionary governmental function.

A traffic light signal system is in the interest of safety to the users of the streets and is installed solely for the public benefit. It is in effect the substituting of a signal for a policeman in regulating traffic in the use of streets. While the cities are not required to install such system, there is statutory authority for the exercise of such police power. C. S., 2787 (11) and (31), Public Laws 1917, chapter 136, sub-chapter V, sec. 1 (k) (ee), Public Laws 1919, chapter 296.

In the instant case the traffic light system is subject to the supervision of the police department. In 43 C. J., 964, Municipal Corporations, sec. 1745, it is said: "The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the public."

The question has been the subject of judicial consideration in other jurisdictions. In *Parsons v. City of New York,* 289 N. Y. S., 198, 248 App. Div., 825, affirmed 273 N. Y., 547, 7 N. E. (2d), 685, under the provision of the city charter making it mandatory duty of police to regulate traffic, the Court said: "Signal lights are an incidental part of traffic regulation. The allegation of the complaint, admitted by failure to deny in the answer, that the city maintained the light involved in this action, necessarily means maintained through the police. Regulation of traffic, and therefore the proper maintenance of signal lights used in that connection, is the performance of a governmental duty, for neglect of the police in the exercise of which the city is not liable."

In *Cleveland v. Town of Lancaster,* 267 N. Y. S., 673, 239 App. Div., 263, affirmed 264 N. Y., 568, 191 N. E., 568, it is stated: "The town boards were also authorized by statute to enact ordinances, rules and regulations relating to peace and good order generally. . . . The erection of the traffic signals was an appropriate exercise of this power. . . . It was in effect an exercise of the police power; the substituting of a signal for a policeman."

In *Dorminey v. City of Montgomery,* 232 Ala., 47, 166 So., 689, *Knight, J.,* said: "Traffic signal lights serve the purpose, and were so designed, to regulate the use of the streets, where installed. There is no duty enjoined by statute upon a municipality to install such signals, and, if installed, it is done in the exercise of a discretionary power, possessed by the municipality to conserve the safety of the public using the streets. . . . We are of the opinion that the city, in installing the signal lights to warn and direct the traveling public, was exercising a governmental function, under its police power. . . ."

Again, in *Auslander v. City of St. Louis,* 332 Mo., 145, 56 S. W. (2d), 778, it is said: "There is a difference, however, between the physical condition of the street and its use by the public. The keeping of a street in a condition reasonably safe for travel thereon has reference to its

physical condition, and is a different matter than the regulation of traffic on such street. The one relates to the corporate or proprietary powers of the city, while the other relates to its governmental or police powers.  .  .  .

"This Court held in *Ex parte Cavanaugh,* 313 Mo., 375, 380, 280 S. W., 51, that the establishment of 'automatic signals and one-way streets' is among the things which the city of St. Louis may provide as a police regulation for the safety and convenience of its inhabitants."

Plaintiff further contends that even though the installation and maintenance of a traffic light signal system may be in the exercise of a governmental function, the repairing of the system is in a proprietary or corporate capacity. An almost identical question arose in the case of *Lewis v. Hunter, supra.* There the car in question was owned by the city of Kinston and used exclusively in the service of its police department. But at the time of the alleged accident the car was being operated on the streets of the city by its employee, a radio mechanic, who was then repairing and testing the police radio installed in the car. Speaking to the question, *Schenck, J.,* wrote: "While it is true the driver of the car was not a policeman, he was employed by the hour by the city to keep in proper repair and condition the radio on said automobile, and it was the function of the city in the exercise of its police power to maintain the radio, and in the performance of the work for which he was employed Spear was performing duties incident to the police power of the city, whether he was engaged in repairing or testing the radio or whether in returning the automobile to the police garage after such repairing or testing, and anything that he did for the city with the automobile in the scope of his employment was done as an incident to the police power of the city—a purely governmental function."

Likewise, in the case in hand, Black was performing duties incident to the police power of the city in going to repair the traffic light, and the use of the truck in scope of his employment was an incident to the police power, a governmental function.

Plaintiff further contends that, in view of the evidence that if the defendant Black had seen a defect in the streets or water system, he would have felt it his duty under general directions of the city manager to report the defect to the proper department, it may reasonably be inferred that he was engaged at the time of the injury to plaintiff in the performance of two duties: First, in the repair of a traffic signal light; and, secondly, in the inspection of city streets for the repair department. The evidence negatives this contention. Black was going to do a specific job, to install a bulb in the traffic light at College and Trade Streets which regulates traffic in that part of the city. *This was his sole duty at the time.*

.

In 43 C. J., 966, it is stated: "The same officer may at one time act in discharge of duties as a police officer of the State, and at another time as the servant of the municipality in carrying out its private powers, and if the act complained of is done in the former capacity no liability is incurred by the municipality."

The judgment below is

Affirmed.

BARNHILL, J., concurring: It has always been the prevailing rule that governmental subdivisions are not liable in damages for the torts of their servants and employees committed in the course of their employment in furtherance of the governmental functions of such subdivisions. This doctrine has been uniformly followed by all the courts of this country and of England. The majority opinion is in entire accord with this time-honored principle of law and is supported by all the authorities.

It is stated in the dissenting opinion that it is not advocated that this long established immunity of governmental units should be abolished and it is recognized therein that whether it should be abolished presents a question of policy for the legislative and not for the judicial branch of the government. Yet it is advocated that the doctrine be modified by judicial decree, which clearly would be an invasion of the prerogatives of the Legislature.

The exception to the prevailing doctrine—recognized in the dissenting opinion as well as in the majority opinion—which imposes liability upon a city or town for damages resulting from the failure to exercise ordinary care in keeping its streets and sidewalks in a reasonably safe condition for the purposes for which they are intended was created by judicial decision. We should be careful not to enlarge or extend this exception without legislative sanction.

The case at bar does not come within the existing exception. While defendant's employee was charged with certain duties relating to the condition of the streets of the city, at the time the plaintiff was injured the employee was actually engaged in discharging duties which related to public safety and were purely governmental. It matters not, therefore, to which particular department he was attached.

A traffic light is an automatic traffic guide, designed to protect and safeguard the general public. It, to a large extent, serves the purpose of a police or traffic officer. Had the employee at the time of the accident been on his way to relieve or lend assistance to a traffic officer there could be no real question as to nonliability. I can see no sound reason why the same rule should not apply where the employee was on his way to repair a traffic light which was used to serve the same purpose which otherwise would have been served by a traffic officer. The

maintenance of such lights has no relation to and in nowise affects the condition of the streets. Proof of its absence would not show or tend to show that the streets and sidewalks were in a condition of bad repair. And surely the city should not be penalized because it adopted this more economical—and some think more effective—method of controlling traffic, and thus reducing the general cost to the taxpayer, as suggested in the dissent.

The doctrine of "The immunity of the Sovereign" has remained in force with the full approval of the people, who have at all times had the right to modify or abolish it through the action of their chosen legislative representatives. The lawmaking body has already relaxed the rule to the extent of making the Workmen's Compensation Act applicable to municipalities. Whether there should be any further modification is for the Legislature. Until and unless it acts this Court should steadfastly adhere to the law as it now exists.

CLARKSON, J., dissenting: Judicial candor compels me to register a dissent from the views of my brothers. Municipal immunity from responsibility for the negligent acts of its employees is a doctrine which should ever remain carefully circumscribed, as it constitutes an exception to the general rule that the master is liable for the damage done by the servant. When the servant of a citizen or a private corporation, negligently kills or injures, the employer is answerable in damages. What I now say is not urged in the interest of removing long established immunity; such questions of policy are for the legislative, not the judicial, forum. My insistence is upon this, and this alone, that in a doubtful and border-line case such as the instant case, the rule of immunity should be construed against the municipality and in favor of the injured citizen. When old legal formulæ must be rewritten to cover some difficult feature of a particular case, courts should ever remember that the law—even government itself—is made for man, not man for the law. In those rare cases in which within the periphery of the law, a free choice is left to the courts, the choice should ever be made on the side of humanity and the relief of the broken and the dying. The opinion of the majority in the instant case is a further extension, in a border-line case, of a rule which often, if not generally, operates with peculiar harshness and cruelty. Here, in my opinion, if the doctrine of immunity, interpreted strictly, is applied to the facts of this case, this case would fall outside the limits of that immunity and an injured citizen would be permitted to present her cause to a jury.

The facts in the instant case are simple; it is the interpretation of those facts which is difficult. The city employee who drove the city truck at the time of the injury to plaintiff was a maintenance man. He

was "engaged in fixing signal lights and installing traffic signs and the maintenance of the white lines." It was also his duty to "paint the signs and set the poles in the holes in the concrete and mark off people's driveways and install signs." He also had a continuing duty, under instructions of the city manager, to report "defective conditions of the street," "holes in the street and defective water meters." The employee testified: "On this particular morning that I went to fix this light at the corner of College and Trade Streets, of course, if I had found any defective place along the street I traveled over that I thought was bad enough that somebody might get hurt, I would have considered it my duty to report it to the various departments it would fall in." His principal duties, accordingly, dealt with the maintenance and repair of various traffic devices and traffic control aids, along with a general duty of street inspection. Most, if not all, of these devices and aids were mechanical substitutes for policemen, established in the interest of economy and efficiency as a means of saving money for the city. The employee was largely busied with electrical repairs and painting. He was not employed by the police department. The traffic signal division was a separate department; he could as well have been attached to the street maintenance force or the street lighting force. Rarely—and certainly not in this case—is there a necessary and imperative connection between the duties of an electrician-sign painter and the governmental functions of a police department. The majority opinion is based upon the assumption that the employee was a police officer. The work in which the employee was engaged was not so much the discharge of a police function as it was the maintenance of mechanical substitutes for traffic officers, which is quite a different matter. In maintaining these mechanical aids and devices, the city was acting primarily in its corporate capacity for the financial benefit and general advantage of the citizen-members of the corporation. In such a situation cities may not claim the immunity of the sovereign.

"When a function is undertaken by a municipality in its private or proprietary capacity for the profit, benefit or advantage of the corporation (or of the people who compose it, rather than for that of the public at large), it is liable for the negligence of its employees to the same extent and under the same conditions as a private corporation." 19 R. C. L., 1109, "Mun. Corp.," paragraph 391.

North Carolina has long followed the view to the effect that a city or town in the exercise of its private or corporate powers is liable in damages for the negligence of its officers, agents, and employees. *Broome v. Charlotte*, 208 N. C., 729; *Hamilton v. Rocky Mount*, 199 N. C., 504. On this point McQuillan, in his extensive work on Municipal Corporations, declares: "When acting in its proprietary capacity . . . the

incorporated city or town, in the absence of some special exemption, is subject to all of the liabilities and usually entitled to all of the rights, immunities and benefits of the private law. The borderline between the public or governmental and the private or *quasi*-private or proprietary side of the municipal corporation in some instances is quite difficult to discern." 6 Mun. Corp., p. 1012. It is just at this borderline that I insist that doubts should be resolved against the city and in favor of the injured citizen. Where the function discharged is for private benefit or pecuniary profit, and damage results from negligence, the municipality is liable to the same extent that a private corporation or individual would be liable. *Goodwin v. Reidsville,* 160 N. C., 411; *Moffitt v. Asheville,* 103 N. C., 237; *Meares v. Wilmington,* 31 N. C., 73; 6 McQuillan, Mun. Corp., p. 1041. To the extent that municipal corporations exercise powers not essentially governmental in character, "voluntarily assumed powers intended for the private advantage and benefit of the locality and its inhabitants, there seems to be no sufficient reason why they should be relieved from that liability to suit the measure of actual damage to which an individual or private corporation exercising the same powers for purposes essentially private would be liable." *Stayton, J.,* in *Galveston v. Posnainsky,* 62 Tex., 118, 50 Am. Rep., 517, quoted with approval in 6 McQuillan, Mun. Corp., p. 1043.

The mere fact that the city employee in the instant case usually received his calls to repair signal lights—as he received the call which he was answering in the instant case—from the police department, is not determinative. It does not affirmatively appear whether he was an employee of the department of safety or of the department of public works. It is the character of the actual function which determines its governmental character. For example, a city is liable in tort in the operation of a municipal garage even though the chief of police has charge of it. *City v. Foster* (Okla.), 247 Pac., 80.

A further reason for resolving the doubt here in favor of the injured plaintiff is that the defense of a city that it was engaged in a governmental function is an affirmative defense and the burden is upon the city to show that the activity engaged in was essentially governmental in nature. *Jones v. Sioux City,* 185 Iowa, 1178, 170 N. W., 445. When it is taken into consideration here that the employee not only had the duty to repair the signal light but also in going to the signal light had the continuing duty to observe and report street defects, it is clear that he was at the time of the injury discharging two functions, one of which may be considered governmental and the other of which is plainly ministerial. In such a case, it may be argued that since both a ministerial and a governmental function is involved, the city is not relieved from liability. See *Cone v. Detroit,* 191 Mich., 198, 157 N. W., 417.

Even if it be granted that the installation of traffic signal lights is a governmental function, it does not necessarily follow that the maintenance and repair of such lights is likewise a governmental function. This very distinction is recognized generally as to streets; although the original construction of the streets is a governmental function, their maintenance is a corporate or ministerial duty. 6 McQuillan, Mun. Corp., p. 1053; as to the North Carolina accord with this view, see the cases cited above.

It cannot be said that the maintenance of traffic signals along the streets is any more in the interest of the general public than the maintenance of the streets themselves along which the signals are installed. The signals are established to regulate the use of the streets and are useless but for the part they play in regulating traffic along the streets. So long as the maintenance of the streets is regarded a corporate function, the maintenance of traffic lights should, by the same standard, be treated as a corporate function. Similar reasoning might have been applied to the maintenance of police radio cars in *Lewis v. Hunter,* 212 N. C., 504. However, it seems to me that the instant case is one calling for the expression of the limits of the rule laid down in that case, and to the extent that the doctrine of that case is regarded as determinative of this case. I am unwilling to follow the majority in the further extension of the rule as to municipal immunity from tort liability.

The doctrine of municipal immunity "is undergoing essential modification, and certain judicial decisions and writers have faith in its abolition. . . ." 6 McQuillan, Mun. Corp., p. 1042; "Objections to the Governmental or Proprietary Text," Murray Seasongood, 22 Va. Law Rev., June, 1936. "Concerning the denial of municipal liability for negligence in the performance of public or governmental function, it has been said that 'the theory is the survival of the medieval idea that the sovereign power can do no wrong. Reasons for its existence are based upon theories discarded and exploded in every other realm dealing with the relationship of citizens to government and government to citizens.' The doctrine has been seriously questioned and condemned by eminent jurists and distinguished legal authors." McQuillan, Mun. Corp., p. 1054, quoting from *McNaught, J.,* in *Baty v. City of Binghamton,* 252 N. Y. S., 263, 265-6; 141 Mis. Rep., 127.

In the words of *McNaught, J.,* in *Baty v. Binghamton, supra:* "The doctrine of nonliability of municipal corporations, even in the exercise of governmental functions, has been seriously questioned and condemned. Eminent jurists and distinguished legal authors have criticized the doctrine in unsparing terms. Reasons for immunity in one case and liability in the other have been clearly shown not to be satisfactory. The United States Supreme Court has said: 'We must not be understood

as conceding the correctness of the doctrine by which a municipal corporation, as to the discharge of its administrative duties, is treated as having two distinct capacities, the one private or corporate, and the other governmental or sovereign, in which latter it may inflict a direct and positive wrong upon the person or property of a citizen without power in the courts to afford redress for such wrong.' *Workman v. City of New York,* 179 U. S., 552, 574; 21 S. Ct., 212, 220; 45 L. Ed., 314."

Professor Borchard has made it clear that the modern tendency is against the rule of nonliability as to municipal corporations. "Government Liability in Tort," 34 Yale Law Journal, 528. The late *Justice Cordoza* wrote, "The line of demarcation (between corporate and governmental functions) . . . has at best a dubious correspondence with any dividing line of justice. The distinction has been questioned by the Supreme Court of the United States. It has been rejected recently in Ohio." Law and Literature, p. 57, citing *Workman v. City of New York, supra,* and *Fowler v. City of Cleveland,* 100 Ohio St., 158, 126 N. E., 72. More recently Professor Barnett has demonstrated that the recently attempted distinction between the so-called "public" and "private" functions of municipal corporations did not exist at English common law, that the distinction was made in the *Dartmouth College case* only for the protection of contract obligations and was forcibly grafted upon municipal tort law in *Bailey v. City of New York* (1842) in holding the city liable. He criticizes the distinction as being reactionary and unfortunate in that it limited the liability of municipal corporations to one class of functions in contradiction to the prevailing view which logically applied the general principle of tort liability to all corporations alike. "The Foundations of the Distinction Between Public and Private Functions in Respect to the Common Law Tort Liability of Municipal Corporations," James D. Barnett, 16 Oregon Law Review, April, 1937, p. 250.

The problem is essentially a social one of distributing the social and economic effects of injury or death so that it may be borne in the most desirable manner. Under the traditional rule of immunity the loss falls heavily upon the individual, often an individual or family who is poorly prepared to withstand the economic shock of serious illness or death. In an enlightened age the social policy of permitting such a loss to lie where it has fallen may well be questioned. So long as government exists as a group society, one of its primary aims must be the distribution of losses to the end that the plight of the unfortunate individual may be made less severe by the aid of the group which exists for the protection of the individuals within that group.

The social and legal reasons for challenging a further extension of the doctrine of municipal immunity from tort liability in the instant

case, in my opinion, are compelling. In the first place, the facts of this case are such that, on the facts alone, it may well be held to be beyond the scope of the rule of nonliability. In the second place, there is at least doubt as to the applicability of the nonliability doctrine to the facts of this case, and in such a situation the law resolves the doubts against the immunity and in favor of the injured citizen. Finally, the doctrine of nonliability has been so sharply challenged both as to its legal and historical soundness and as to its social desirability, that, in my opinion, the rule should not be extended further, but should be limited sharply to those fact situations which are clearly covered by the prior pronouncements of this Court.

No government stands above the moral code. What is simple justice between men should be justice between governments and men. A law cannot hope for permanence which rests largely upon the superior force of the sovereign; law should represent the group consciousness of the right, the fused good will of the individuals within the group. A sovereignty born of the common welfare means, more than anything else, the ability to secure the assent of the individuals within the group. There is nothing sacred or essential in the doctrine of municipal nonliability for torts. The State and municipalities can function as surely, and perhaps with greater precision in the meting out of exact justice among its people, if the doctrine of nonliability is strictly interpreted and applied as the exception rather than the general rule.