JOSEPH F. STEELMAN, ADMINISTRATOR OF THE ESTATE OF JOSEPH FLAKE STEELMAN, JR. v. CITY OF NEW BERN, NORTH CAROLINA, A MUNICIPAL CORPORATION

No. 6

(Filed 10 November 1971)

1. **Municipal Corporations § 12— electrocution of boy — action against municipality — sovereign immunity doctrine**

    The doctrine of sovereign immunity completely bars an action against a municipality for the death of a 16-year-old boy who was electrocuted when he touched a guy wire maintained by the municipality as a part of its street lighting system.

2. **Municipal Corporations § 12; State § 4; Constitutional Law § 10— modification of sovereign immunity doctrine — role of the Supreme Court**

    Modification or repeal of the doctrine of sovereign immunity should come from the General Assembly, not from the Supreme Court.

APPEAL by plaintiff from *Blount, J.,* December 1970 Civil Session of CRAVEN Superior Court.

On the night of 3 October 1969 Joseph Flake Steelman, Jr., attended a football game at the high school in New Bern, North

Carolina. While looking for an automobile in which he was to ride home, he was electrocuted when he touched a guy wire which supported a light pole on the New Bern High School grounds. The pole in question was owned by the city of New Bern as part of its operation of an electric distribution system. Joseph F. Steelman, father of the deceased and administrator of his estate, brought a civil action against the city of New Bern for the wrongful death of his sixteen-year-old son, alleging that his son's death was caused by the negligence of the city. The city filed an answer denying negligence and pleading governmental immunity.

In apt time defendant made a motion for summary judgment alleging that the cause of action arose out of the maintenance of a street lighting system operated by the city, a governmental rather than proprietary function, and that the doctrine of governmental immunity was applicable and constituted a complete bar to the action. Defendant filed affidavits of the city manager and an electrical engineer with the motion. These affidavits stated that the pole and wire in question were a part of the public street lighting system of the city of New Bern and that this system was separate and apart from the electrical system employed in the distribution of electricity for private purposes. The plaintiff did not respond to the defendant's affidavits by way of counter-affidavits or otherwise, as provided by Rule 56 of the North Carolina Rules of Civil Procedure.

On 3 November 1970 Judge Blount, after finding the facts in accordance with defendant's affidavits, concluded as a matter of law that plaintiff's cause of action arose out of the maintenance by defendant, a municipal corporation, of its public street lighting system; that the maintenance of said system was a governmental rather than a proprietary function; and that even if it should appear that the defendant was guilty of any act of negligence as alleged in the complaint, the defendant would have no liability to the plaintiff by reason thereof, for that governmental immunity is applicable and constitutes a complete bar to the maintenance of this action by plaintiff. The court then allowed the defendant's motion for summary judgment and dismissed the action.

Plaintiff excepted to the signing of the judgment and gave notice of appeal to the Court of Appeals. The case was trans-

ferred to this Court for initial appellate review under our order of 31 July 1970, entered pursuant to G.S. 7A-31(b)(4).

*Adams, Lancaster, Seay, Rouse & Sherrill by Basil L. Sherrill and John E. Lansche for plaintiff appellant.*

*Walter L. Horton, Jr., and A. D. Ward for defendant appellee.*

MOORE, Justice.

[1] Plaintiff's sole assignment of error is to the granting of defendant's motion for summary judgment on the basis that the governmental immunity doctrine applies to the maintenance of a municipal street lighting circuit.

Plaintiff, in an excellent and persuasive brief, concedes that this Court in *Baker v. Lumberton,* 239 N.C. 401, 79 S.E. 2d 886 (1953), held that a municipal corporation is not liable for negligence of its officers or agents when the injury results from contact with a wire used by the city in transmitting electricity for street lighting purposes only, since street lighting was a governmental function and not a proprietary function. In that case Justice Winborne (later Chief Justice) said:

> "1. It is contended, and rightly so, that the evidence shows affirmatively that the death of plaintiff's intestate resulted from contact with a wire used by the city in transmitting electricity for street lighting purposes only, a governmental function, in the performance of which the city is not liable for tortious acts of its officers and agents. *Hodges v. Charlotte,* 214 N.C. 737, 200 S.E. 889; *Beach v. Tarboro,* 225 N.C. 26, 33 S.E. 2d 64; *Alford v. Washington,* 238 N.C. 694; *Hamilton v. Hamlet,* 238 N.C. 741.

> "The decisions of this Court uniformly hold that, in the absence of some statute which subjects them to liability therefor, when cities acting in the exercise of police power, or judicial, discretionary, or legislative authority, conferred by their charters or by statute, and when discharging a duty imposed solely for the public benefit, they are not liable for the tortious acts of their officers or agents. See *Hodges v. City of Charlotte, supra;* also *Hamilton v. Hamlet, supra,* and numerous cases there cited.

"And it has been held by this Court that the installing and maintaining of a traffic light system in and by a city is in the exercise of a discretionary governmental function. See *Hodges v. City of Charlotte, supra; Beach v. Tarboro, supra; Alford v. Washington, supra; Hamilton v. Hamlet, supra*."

In feudal England the monarchy was sovereign and could not be liable for damage to its subjects. This was based on the theory that "the king could do no wrong." Apparently, the present-day doctrine of governmental immunity from tort liability originated in the English case of *Russel v. Men of Devon*, 2 T.R. 667, 100 Eng. Rep. R. 359 (1788), which held that an unincorporated town could not be liable for damage caused by a defective bridge.

The doctrine was not a part of the common law of England which was adopted by the State of North Carolina in G.S. 4-1. That statute adopted the common law of England as of the date of the signing of the Declaration of Independence, which took place thirteen years before the *Russel* case was decided. The early North Carolina decisions expressly rejected the doctrine. *Meares v. Wilmington*, 31 N.C. 73 (1848); *Wright v. Wilmington*, 92 N.C. 156 (1885). However, commencing with the decision in *Moffitt v. Asheville*, 103 N.C. 237, 254, 9 S.E. 695, 697 (1885), this Court has not wavered from the basic rule there succinctly stated by Justice Avery:

"The liability of cities and towns for the negligence of their officers or agents, depends upon the nature of the power that the corporation is exercising, when the damage complained of is sustained. A town acts in the dual capacity of an *imperium in imperio,* exercising governmental duties, and of a private corporation enjoying powers and privileges conferred for its own benefit.

"When such municipal corporations are acting (within the purview of their authority) in their ministerial or corporate character in the management of property for their own benefit, or in the exercise of powers, assumed voluntarily for their own advantage, they are impliedly liable for damage caused by the negligence of officers or agents, subject to their control, although they may be engaged in some work that will enure to the general benefit of the municipality. . . .

"On the other hand, where a city or town in exercising the judicial, discretionary or legislative authority, conferred by its charter, or is discharging a duty, imposed solely for the benefit of the public, it incurs no liability for the negligence of its officers, though acting under color of office, unless some statute (expressly or by necessary implication) subjects the corporation to pecuniary responsibility for such negligence. . . . "

Plaintiff contends, however, that despite these decisions the origin of the doctrine of governmental immunity is questionable, its application results in gross inequities, and that the very definite trend in modern decisions is to abolish the doctrine.

From 1788 until fourteen years ago the doctrine of governmental immunity from tort liability remained the rule in all jurisdictions in this country, although for many years the doctrine has been under attack. See 5 Wake Forest Intra. L. Rev. 383 (1969) ; 1964 Duke L. J. 888 (1964) ; 41 N.C.L. Rev. 290 (1963).

In 1957 the Florida Supreme Court retreated from its previously announced position on the doctrine of governmental immunity. In doing so the Court first addressed itself to the ancient theory that "the king can do no wrong." The Florida Court said that this idea had been erroneously transposed into our democratic system and that the time had arrived to declare this doctrine anachronistic not only to our system of justice, but to our traditional concepts of democratic government. That Court then held that when an individual suffers a direct personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong done. *Hargrove v. Town of Cocoa Beach*, 96 So. 2d 130 (Fla. 1957) ; Annot., 60 A.L.R. 2d 1193.

Since 1957 fifteen jurisdictions, in addition to Florida, have overruled or greatly modified the immunization of municipalities from tort liability. See: *Colorado Racing Commission v. Brush Racing Association*, 136 Colo. 279, 316 P. 2d 582 (1957) ; *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11, 163 N.E. 2d 89 (1959) ; *Muskopf v. Corning Hospital District*, 55 Cal. 2d 211, 359 P. 2d 457, 11 Cal. Rptr. 89 (1961) ; *Williams v. City of Detroit*, 364 Mich. 231, 111 N.W. 2d 1

(1961); *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 115 N.W. 2d 618 (1962); *Spanel v. Mounds View School District No. 621,* 264 Minn. 279, 118 N.W. 2d 795 (1962); *City of Fairbanks v. Schaible,* 375 P. 2d 201 (Alas. 1962); *Stone v. Arizona Highway Commission,* 93 Ariz. 384, 381 P. 2d 107 (1963); *Haney v. City of Lexington,* 386 S.W. 2d 738 (Ky. 1964); *Brinkman v. City of Indianapolis,* 141 Ind. App. 662, 231 N.E. 2d 169 (1967); *Bergen v. Koppenal,* 97 N.J. Super. 265, 235 A. 2d 30 (1967); *Parish v. Pitts,* 244 Ark. 1239, 429 S.W. 2d 45 (1968); *Brown v. City of Omaha,* 183 Neb. 430, 160 N.W. 2d 805 (1968); *Tucker v. City of Okolona,* 227 So. 2d 475 (Miss. 1969); *Becker v. Beaudoin,* 261 A. 2d 896 (R.I. 1970).

Plaintiff contends that this Court should follow the modern trend and since the Court first declared the doctrine, it is appropriate that the Court should now declare that such doctrine no longer serves a useful purpose. It is true that the doctrine was first adopted in North Carolina by this Court. However, this judge-made doctrine is firmly established in our law today, and by legislation has been recognized by the General Assembly as the public policy of the State. See *Galligan v. Town of Chapel Hill,* 276 N.C. 172, 171 S.E. 2d 427 (1969). See also G.S. 160-191.1, which provides:

> "Municipality empowered to waive governmental immunity.—The governing body of any incorporated city or town, by securing liability insurance as hereinafter provided, is hereby authorized and empowered, but not required, to waive its governmental immunity from liability for any damage by reason of death, or injury to person or property, proximately caused by the negligent operation of any motor vehicle by an officer, agent or employee of such city or town when acting within the scope of his authority or within the course of his employment. Such immunity is waived only to the extent of the amount of the insurance so obtained. Such immunity shall be deemed to have been waived in the absence of affirmative action by such governing body."

Subsequent legislation allowed other governmental bodies to purchase insurance and thereby waive their immunity to that extent. G.S. 153-9(44) (Board of County Commissioners); G.S. 115-53 (City and County Boards of Education); G.S. 115A-17 (Boards of Trustees of Community Colleges); G.S. 143-291

allowed agencies and departments of the State to waive immunity to some extent in certain cases. The General Assembly has modified the doctrine but has never abolished it. In fact, a bill was introduced in the 1971 General Assembly to abolish governmental immunity in its entirety, but this bill failed to pass.

[2] It may well be that the logic of the doctrine of sovereign immunity is unsound and that the reasons which led to its adoption are not as forceful today as they were when it was adopted. However, despite our sympathy for the plaintiff in this case, we feel that any further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court.

Affirmed.