IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-447

Filed 02 May 2023

Wake County, No. 20 CVS 13272

SHANYBEL MARIE SANTER TORRES, Plaintiff,

v.

CITY OF RALEIGH and MARTY LEE HALL, Defendants.

Appeal by Defendants from order entered 24 November 2021 by Judge John W. Smith in Wake County Superior Court. Heard in the Court of Appeals 11 January 2023.

> *Miller Monroe & Plyler, PLLC, by William W. Plyler and Robert B. Rader, III, and William D. Webb, for Plaintiff-Appellee.*

> *City of Raleigh City Attorney Robin L. Tatum, by Deputy City Attorney Hunt K. Choi and Senior Associate City Attorney Amy C. Petty, for Defendant-Appellants.*

GRIFFIN, Judge.

Defendants City of Raleigh and Marty Lee Hall appeal from the trial court's order holding the court had personal jurisdiction over Defendants and denying Defendants' motion to dismiss. Defendants moved to dismiss on grounds of governmental immunity from Plaintiff Shanybel Marie Santer Torres's claims. Defendants contend the trial court erred by finding that Hall was performing a proprietary function as an employee of the City at the time that Plaintiff and Hall

were involved in an automobile accident. We hold that the evidence before the court supported its holding that Hall's mission was proprietary, and therefore affirm.

## I. Factual and Procedural History

On 2 January 2018, Hall and Plaintiff were involved in a motor vehicle accident at an intersection in Zebulon. Hall's vehicle collided with the side of Plaintiff's vehicle when Hall attempted to make a U-turn while Plaintiff was traveling in the lane to his left.

The City[1] dispatched Hall around 8:00 a.m. on the freezing cold morning of January 2 to address reports of a water main leak in a City-owned water line near an intersection on N.C. Highway 97. The City owns and operates metered water lines used to sell water as a utility service for its citizens. The City also owns and operates unmetered water lines for emergency response purposes, such as firefighting. Private businesses serviced by the City's unmetered lines must construct backflow valves on the water lines to prevent contaminated water from flowing backwards and commingling with potable water. Backflow valves are owned and operated by private businesses and the City has no duty to maintain or repair backflow valves.

The intersection where the accident occurred is T-shaped, where N.C. Highway 264 meets N.C. Highway 97, in part to allow ingress and egress to a shopping center. The shopping center includes a Murphy gas station with frontage on the westbound

---

[1] The events of this case occurred in the Town of Zebulon. The City of Raleigh is named as Defendant here because Zebulon merged its water and sewer utilities with those of the City in 2006.

side of Highway 97. At this intersection, a city water main exists on the eastbound side of Highway 97 to control the flow of water which the City sells as a utility service. Pipes from this water main extend under the intersection and connect to water infrastructure on the westbound side of Highway 97 to support the needs of the businesses there, including the Murphy gas station. The eastbound side of Highway 97 consists of two lanes as it approaches the intersection: a left lane designated as a left-turn lane and a right lane for traffic continuing straight.

As Hall neared the intersection that day, he saw that the water main on the eastbound side of Highway 97 was not leaking, as reported. Rather, water appeared to be leaking from a ruptured backflow prevention valve in the corner of the Murphy gas station parking lot on the westbound side. Plaintiff, on her way to work at a Wal-Mart store behind the gas station, approached the intersection traveling in the left-turn lane. Hall approached the intersection while traveling in the right lane, slightly ahead of Plaintiff. Just before reaching the intersection, Hall made an abrupt U-turn to the left, colliding with Plaintiff's vehicle.

Plaintiff suffered injuries to her brain and her left arm as a result of the accident. Plaintiff underwent surgery to repair her left arm and was hospitalized for a total of twenty-one days.

On 20 November 2020, Plaintiff filed her initial complaint naming the City and Hall, in his official capacity only, as defendants. Defendants filed an answer and moved to dismiss on grounds which included governmental immunity. On 19

February 2021, Defendants filed a notice of hearing establishing a hearing on their motion to dismiss to be held on 8 April 2021. Plaintiff later filed motions to amend her complaint to also name Hall in his individual capacity, and to assert that Defendants were acting in a proprietary capacity when the accident occurred. On 5 April 2021, Defendants filed affidavits in support of their motion to dismiss, seeking to show that Hall was acting in a governmental role when the accident occurred.

Plaintiff then moved to continue the April 8 hearing so that the parties could undergo jurisdictional discovery regarding the issue of personal jurisdiction. The trial court allowed the motion, continuing the hearing on Defendants' motion to dismiss until 4 November 2021. Plaintiff deposed Hall on his purpose at the time of the accident, and, on 2 November 2021, filed affidavits and other evidence to support her claim.

On 4 November 2021, the trial court conducted a hearing (the "Dismissal Hearing") on Plaintiff's motion to amend her complaint and Defendants' motion to dismiss. On 24 November 2021, the trial court entered written orders denying Defendants' motion to dismiss "under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure" (the "Dismissal Order"); denying Defendants' request to certify the issue of governmental immunity for appellate review (the "Certification Order"); and granting Plaintiff's motion to amend her complaint (the "Amendment Order"). In denying Defendants' motions, the trial court specified that, based on "the pleadings, competent matters of record, memorandums

of law, and oral arguments of counsel, the [c]ourt finds that [Hall] was engaged in the performance of a proprietary function . . . at the time of the vehicular collision in question." The court further stated that the issue of governmental immunity could be "reconsidered . . . upon the completion of all discovery or at or after the pretrial conference."

Defendants timely appeal from the Dismissal Order. [2]

## II.  Analysis

Defendants contend the trial court erred by denying their motion to dismiss because the facts indisputably showed that Hall was acting in a governmental capacity at the time of the collision, and, therefore, Defendants are entitled to governmental immunity from suit. Defendants also contend the trial court made credibility determinations which were unsupported by the undisputed evidence. We address each argument.

## A. Standard of Review

The trial court's Dismissal Order denied Defendants' motion to dismiss "under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure" based on "the contested issue of . . . governmental immunity." Defendants contend only that the trial court's holding is an erroneous conclusion of law that the court had

---

[2] The trial court issued the Certification Order and the Amendment Order alongside its Dismissal Order, but Defendants challenge neither the Certification Order nor the Amendment Order on appeal, as their notice of appeal takes appeal only from the "Order Denying Defendants' Motion to Dismiss entered on November 24, 2021[.]"

personal jurisdiction over Defendants, and we therefore address only that conclusion in this appeal.

This Court has consistently stated that a denial of governmental immunity should be classified as an issue of personal jurisdiction under Rule 12(b)(2). *See Providence Volunteer Fire Dep't v. Town of Weddington*, 253 N.C. App. 126, 131, 800 S.E.2d 425, 430 (2017) (citing *Can Am S., LLC v. State*, 234 N.C. App. 119, 123–24, 759 S.E.2d 304, 308 (2014); *Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 100, 545 S.E.2d 243, 245–46 (2001)); N.C. R. Civ. P 12(b)(2). "The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005). "Three procedural postures are typical: '(1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.'" *Providence*, 253 N.C. App. at 134, 800 S.E.2d at 432 (citation omitted).

Though, in a fourth posture, upon receipt of "dueling affidavits" the trial court may elect to determine the matter based upon evidence presented during an evidentiary hearing:

> [I]f the parties submit dueling affidavits, the court may hear the matter on affidavits presented by the respective parties, or the court may direct that the matter be heard

wholly or partly on oral testimony or depositions. If the trial court chooses to decide the motion based on affidavits, the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror. Further, where parties submit depositions to the trial court, and the court's findings are replete with facts taken from these depositions, after holding a hearing on the question of personal jurisdiction where parties argue facts based on the depositions, such a case has moved beyond the procedural standpoint of competing affidavits to an evidentiary hearing. In such circumstances, the trial court must act as a fact-finder, and decide the question of personal jurisdiction by a preponderance of the evidence, because a plaintiff then has the ultimate burden of proving jurisdiction rather than the initial burden of establishing *prima facie* that jurisdiction was proper.

*Parker v. Town of Erwin*, 243 N.C. App. 84, 97, 776 S.E.2d 710, 721–22 (2015) (alterations cleaned up, internal citations and quotation marks omitted); *see also Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217 (2000) ("If the exercise of personal jurisdiction is challenged by a defendant, a trial court may hold an evidentiary hearing including oral testimony or depositions or may decide the matter based on affidavits.").

Here, this matter moved into the second typical posture when Defendants submitted affidavits supporting their motion to dismiss. The trial court then continued its Dismissal Hearing to allow the parties to conduct limited jurisdictional discovery. Plaintiff deposed Hall, then submitted the deposition, affidavits supporting her complaint, and additional documentation to the court. At this time, the case arguably moved into the third typical posture. Defendants contend that the

evidence contained in Plaintiff's affidavits did not dispute the evidence pertaining to personal jurisdiction found in Defendants' affidavits, and, therefore, this case should be considered from the second typical posture.

However, this case is more appropriately considered from the fourth posture as described in *Parker*. After receiving the "dueling affidavits" and Hall's deposition, the trial court elected to hold a full evidentiary hearing. During the Dismissal Hearing, the trial court heard arguments from each party's counsel concerning the affidavits, depositions, and multiple exhibits illustrating how the accident occurred. The Dismissal Order does not contain multiple findings "replete with facts" from the depositions, but it is clear from the Order's language that the trial court directed that the matter be heard wholly or partly on Hall's deposition, held an evidentiary hearing, and made its decision based upon matters beyond the affidavits, including "the pleadings, competent matters of record, memoranda of law, and oral arguments of counsel[.]" *See Deer Corp. v. Carter*, 177 N.C. App. 314, 322, 629 S.E.2d 159, 166 (2006) (concluding that the "case had moved beyond the procedural standpoint of competing affidavits to an evidentiary hearing" because "the trial court held a hearing on the question of personal jurisdiction, and although no witnesses testified at the hearing, both parties argued facts based on the depositions").

Therefore, the trial court was charged to "act as a fact-finder, and decide the question of personal jurisdiction by a preponderance of the evidence," with Plaintiff bearing "the ultimate burden of proving jurisdiction rather than the initial burden of

establishing *prima facie* that jurisdiction was proper." *Parker*, 243 N.C. App. at 97, 776 S.E.2d at 722. Ordinarily, "[w]hen this Court reviews a decision as to personal jurisdiction, it considers only 'whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.'" *Banc of Am. Sec., LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (citation omitted). However, "[q]uestions of law regarding the applicability of sovereign or governmental immunity are reviewed de novo," *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611, 781 S.E.2d 282, 284 (2016) (citations omitted), and we review the trial court's decision as to personal jurisdiction *de novo*, as well, when it turns solely on the question of governmental immunity, *see Farmer v. Troy Univ.*, 382 N.C. 366, 370, 879 S.E.2d 124, 127 (2022). Where specific findings of fact are not made in the trial court's order, and no such findings were requested by a party, this Court will presume that the trial court found facts sufficient to support its ruling, if such findings may be made from the record evidence. *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350 S.E.2d 111, 114 (1986).

## B. Governmental or Proprietary Function

We now consider whether, based on a preponderance of the evidence before the court in its Dismissal Hearing, Plaintiff showed the existence of personal jurisdiction. Specifically, we must determine whether the evidence supports the trial court's determination that Hall was acting in a proprietary capacity at the time of the accident and not entitled to governmental immunity.

"As a general rule, '[u]nder the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity.'" *Wray v. City of Greensboro*, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017) (citation omitted). "Governmental immunity is that portion of the State's sovereign immunity which extends to local governments." *Id.* (citation omitted). "Under the doctrine of governmental immunity, a [municipality] is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) (citation omitted). "The State's sovereign immunity applies to both its governmental and proprietary functions, while the more limited governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions." *Evans v. Hous. Auth. of City of Raleigh*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004).

Our Courts "have long held that a 'governmental' function is an activity that is 'discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State rather than for itself.'" *Est. of Williams ex rel. Overton v. Pasquotank Cnty. Parks & Recreation Dep't*, 366 N.C. 195, 199, 732 S.E.2d 137, 141 (2012) (citation omitted). "A 'proprietary' function, on the other hand, is one that is 'commercial or chiefly for the private advantage of the compact community.'" *Id.* (citations omitted). "When a municipality is acting 'in behalf of the State' in promoting or protecting the health, safety, security or general welfare of its citizens, it is an agency of the sovereign." *Britt v. City of Wilmington*, 236 N.C. 446, 450, 73

S.E.2d 289, 293 (1952). "When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers." *Id.* at 450–51, 73 S.E.2d at 293.

Defendants concede that the City dispatched Hall on the morning of January 2 to conduct a proprietary task—repairing a water main used to sell water for private consumption by its citizens.[3] Further, Defendants do not dispute that, at all times up and until the moments just prior to the accident, Hall's assigned mission was to repair a ruptured water main pipe. Nonetheless, Defendants have consistently represented to the courts that Hall's purpose became governmental just before the accident, when Hall realized the water was coming from the Murphy's backflow prevention valve and attempted the U-turn in order to cut the water off for the safety of the public on the freezing winter morning. *See Faw v. Town of N. Wilkesboro*, 253 N.C. 406, 409–10, 117 S.E.2d 14, 17 (1960) ("[H]owever, as a municipality undertakes to supply water to extinguish fires, or for some other public purpose, it acts in a governmental capacity, and cannot be held liable for negligence." (citations omitted)).

Defendants contend the trial court's ruling was erroneous because Hall's purpose as of the specific time of the accident had become governmental, and our

---

[3] Our Supreme Court has long instructed: "When a municipal corporation operates a system of waterworks for the sale by it of water for private consumption and use, it is acting in its proprietary or corporate capacity and is liable for injury or damage resulting from such operation to the same extent and upon the same basis as a privately owned water company would be." *Mosseller v. City of Asheville*, 267 N.C. 104, 107, 147 S.E.2d 558, 561 (1966) (citation omitted).

courts' focus should be the purpose at that specific point in time. Defendants assert that this is not a novel perspective for this Court, and that, "[m]oreover, the fact that [Hall's] mission changed from its inception is irrelevant." Defendants cite to the following rules to support their argument that the only material time is the employee's mission and/or purpose at the specific moment the tortious conduct occurred: "The mission of the town's employee, out of which the alleged injury to the plaintiff arose, is the determining factor . . . not what such employee was called upon to do at other times and places, but what he was engaged in doing at *the particular time and place alleged.*" *Jones v. Kearns*, 120 N.C. App. 301, 304, 462 S.E.2d 245, 247 (1995) (emphasis added) (quoting *Beach v. Town of Tarboro*, 225 N.C. 26, 28, 33 S.E.2d 64, 65–66 (1945)). "While [the] defendant's employee was charged with certain [proprietary] duties . . ., at the time the plaintiff was injured the employee was actually engaged in discharging duties which related to public safety and were purely governmental. It matters not, therefore, to which particular department he was attached." *Hodges v. City of Charlotte*, 214 N.C. 737, 742, 200 S.E. 889, 892 (1939) (Barnhill, J., concurring).

Defendants misconstrue their cited precedent. In *Jones v. Kearns*, the "particular time and place alleged" was a police officer's actions as a safety officer responding to an emergency during her assignment at a proprietary fair. *Jones*, 120 N.C. App. at 305, 462 S.E.2d at 247. This Court noted that, in accordance with her assigned mission, the officer was actively responding to the emergency as an officer

when the tortious conduct occurred. *Id.* However, this fact was not dispositive in our Court's holding. The Court in *Jones* ruled that the officer's mission at the time of the tortious conduct was governmental because she was generally assigned to police the fair as a safety officer, despite the proprietary nature of the fair. *Id.* Similarly, in *Beach v. Town of Carboro*, the Court also commented on the employee's actions at the time of accident, but ruled that the employee's purpose was governmental based upon the purpose he was assigned that day: repairing streetlights for public benefit. *Beach*, 225 N.C. at 28, 33 S.E.2d at 65–66.

Further, in *Hodges v. City of Charlotte*, this Court held that the particular time and place alleged was the employee's presently assigned task of repairing traffic signals, a governmental duty, despite his simultaneous employment as a street inspector, a proprietary role. *Hodges*, 214 N.C. at 741, 200 S.E. at 891. The *Hodges* plaintiff put forth an argument similar to the one posed by Defendants in this case, contending that the defendant employee's mission could have been both governmental and proprietary, and that the employee could have shifted between the two based on his subjective intent, during his assignment:

> Plaintiff further contends that, in view of the evidence that if the defendant [employee] had seen a defect in the streets or water system, he would have felt it his duty under general directions of the City Manager, to report the defect to the proper department, it may reasonably be inferred that he was engaged at the time of the injury to [the] plaintiff in the performance of two duties: First, in the repair of a traffic signal light; and, secondly, in the inspection of city streets for the repair department. The

> evidence negatives this contention. [The employee] was
> going to do a specific job, to install a bulb in the traffic light
> at College and Trade Streets which regulates traffic in that
> part of the city. *This was his sole duty at the time*.

*Id.* The Court in *Hodges* expressly rejected this argument because the employee was assigned a "specific job" which was his "*sole duty*" when the tortious conduct occurred. *Id.* We are bound to reach a similar result here.

It is true that these cases present the longstanding rule that an employee who ordinarily works for a proprietary purpose may be found to conduct actions for a governmental purpose, or vice versa, based on the particular time and place the tortious conduct occurred. However, our Courts have never so narrowly parsed an employee's assignment into its individual events in order to determine governmental or proprietary purpose. To do so would be to adopt a new rule of law, that a purpose or mission must be assessed as of the exact moment in time even when it would indicate a deviation from the employee's generally assigned mission. Indeed, this Court recognizes that similar legal principles exist in analogous areas of law, such as frolics in other contexts of *respondeat superior* liability. *See Parrott v. Kantor*, 216 N.C. 584, 588, 6 S.E.2d 40, 43 (1939) (stating rule that an employer is not liable for the acts of his employee which deviate from the scope of employment "in pursuit of his private or personal ends" (citation omitted)). Nonetheless, a rule of this kind has never been applied by our Courts in the current context.

Based upon the undisputed evidence before the trial court, the court could

reasonably have found that Hall was assigned a single purpose on the morning of January 2: to assess the reports of a water main break near the intersection where the accident occurred. Even more particularly, the undisputed evidence showed only that Hall was attempting a U-turn at the time the accident occurred. Defendants presented to the trial court that Hall turned in order to travel back in the direction of the Murphy gas station, but this was also the route Hall would have taken to begin a return trip after learning there was no water main break. *Hodges*, 214 N.C. at 741, 200 S.E. at 891 (noting that if employee was returning from a finished task, it would not affect the employee's mission). Regardless of whether the service was performed or needed, the evidence showed that Hall's sole duty on the morning of January 2 was to repair a City-owned water main line—a proprietary purpose for which Defendants are not immune from suit. *Mosseller*, 267 N.C. at 107, 147 S.E.2d at 561. The trial court did not err in concluding the evidence showed "Hall was engaged in the performance of a proprietary function within the course and scope of his employment with [the City] at the time of the vehicular collision in question."

## C. Credibility Determinations

Defendants also contend "the trial court committed reversible error in making an adverse determination of [Hall's] credibility" because the evidence concerning "Hall's mission at the time of the accident" was undisputed. However, to support their claim that the trial court's decision turned on Hall's credibility, Defendants refer solely to language from the Certification Order. Defendants did not take an appeal

from that order and it is therefore not before us for review.

Nonetheless, to the extent that the trial court's focus on Hall's credibility can be derived from the Dismissal Order, the trial court was permitted to consider Hall's credibility when determining whether Plaintiff had shown personal jurisdiction by a preponderance of all the evidence. The only undisputed facts of this case are the objective events that transpired leading up to and including the accident. The subjective statements of purpose proffered by Hall were contradicted by Plaintiff throughout the proceedings, including by Plaintiff's counsel during arguments in the Dismissal Hearing. Therefore, if the trial court did consider Hall's credibility in its determinations, it did not do so in error.

## III. Conclusion

We hold that Plaintiff satisfied her ultimate burden of proving the court had personal jurisdiction over her claims because the evidence before the court showed that Hall was carrying out an assigned governmental mission at the time of the motor vehicle accident. We affirm the Dismissal Order.

AFFIRMED.

Judges MURPHY and CARPENTER concur.