JUNIUS THORPE, ADMINISTRATOR OF THE ESTATE OF SHIRLEY ANN THORPE v. CHARLES E. WILSON, JR., ADMINISTRATOR OF THE ESTATE OF ROBERT MANSON WILSON

No. 8110SC874

(Filed 20 July 1982)

1. **Executors and Administrators § 19.1— wrongful death claim—statute of limitations—recovery of automobile liability insurance**

The failure of plaintiff to file a wrongful death claim against a decedent's estate within six months as required by G.S. 28A-19-3(b)(2) as it existed at the time of the accident in question in 1976 did not bar the claim where plaintiff was seeking to collect damages out of an automobile insurance policy, an undistributed asset of the estate.

2. **Pleadings § 34; Rules of Civil Procedure § 15— amendment of complaint—correction of name of party**

Plaintiff's amendment of his complaint in a wrongful death action to name "Charles E. Wilson, Jr." rather than "Charles E. Wilson, Sr." as the defendant administrator related back to the time of the original complaint pursuant to G.S. 1A-1, Rule 15(c) where Wilson, Jr. was the only administrator of the intestate's estate, he was properly served when his mother accepted the documents at his residence even though the name of his father appeared on the complaint, and the effect of the amendment was merely to correct the name of a person already in court.

3. **Death § 7.4— wrongful death—lost income and household services—testimony by expert in economics**

The trial court in a wrongful death case properly permitted an expert in economics to testify as to the present monetary value of the future net income plaintiff's intestate could have earned had she not been killed and the present monetary value of the household services lost to the intestate's parents as a result of her death.

4. **Damages § 11.2— action against personal representative—no punitive damages**

There can be no recovery for punitive damages against the personal representative of the deceased wrongdoer, however aggravated the circumstances may be.

APPEAL by defendant from *Godwin, Judge.* Judgment entered 14 May 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 5 April 1982.

Plaintiff in his representative capacity instituted this action on 10 May 1977, seeking recovery of damages for the wrongful death of his intestate Shirley Ann Thorpe. Plaintiff's intestate, Shirley Ann Thorpe, and defendant's intestate, Robert Manson Wilson, were both killed 16 April 1976, in a head-on collision on U.S. 70, approximately five miles west of Raleigh. Plaintiff alleged that the collision resulting in the death of his intestate was caused by the negligence of defendant's intestate.

Charles E. Wilson, Jr. qualified as the administrator of the estate of Robert M. Wilson on 22 April 1976, and published notice to creditors for four weeks beginning 30 April 1976. Russell W. Dement, Jr., wrote to Great American Insurance Company, defendant intestate's automobile liability insurer, and advised that he was representing plaintiff in a claim for wrongful death against the estate of Robert M. Wilson. Mr. Dement was allowed to withdraw as plaintiff's counsel of record seven months after filing the complaint. Eugene Boyce became attorney of record three months later.

A motion by defendant for summary judgment was allowed to the extent that any judgment obtained on behalf of the plaintiff's estate would be barred as against any assets of Wilson's estate except the amounts of any liability insurance coverage applicable to the claim. Defendant's petition for a writ of certiorari to review the order was denied.

Defendant admitted liability, and the case was tried on the damages issue only. The jury returned a verdict for plaintiff in the amount of $85,000. Defendant appeals, bringing forward five assignments of error. Plaintiff sets forth three cross assignments.

*Boyce, Morgan, Mitchell, Burns and Smith, by Greg L. Hinshaw and Lacy M. Presnell, III, for plaintiff appellee.*

*Johnson, Patterson, Dilthey and Clay, by Robert W. Sumner and Robert M. Clay, for defendant appellant.*

MORRIS, Chief Judge.

[1]   Defendant argues, by his first assignment, that plaintiff's wrongful death claim is barred by the six-month limitation provision of G.S. 28A-19-3(b)(2) as it existed 16 April 1976. The applicable statute read as follows in 1976:

> (a) All claims, except contingent claims based on any warranty made in connection with the conveyance of real estate, against a decedent's estate which arose *before* the death of the decedent, including claims of the United States and the State of North Carolina and subdivisions thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, secured or unsecured, founded on contract, tort, or other legal basis, which are not presented to the personal representative or collector pursuant to G.S. 28A-19-1 within six months after the day of the first publication or posting of the general notice to creditors as provided for in G.S. 28A-14-1 are forever barred against the estate, the personal representative, the collector, the heirs, and the devisees of the decedent.
>
> (b) All claims against a decedent's estate which *arise at or after the* death of the decedent, including claims of the United States and the State of North Carolina and subdivisions thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, secured or unsecured, founded on contract, tort, or other legal basis *are forever barred against the estate*, the personal representative, the collector, the heirs, and the devisees of the decedent *unless presented* to the personal representative or collector as follows:
>
>> (1) A claim based on a contract with the personal representative or collector, within six months after performance by the personal representative or collector is due;
>>
>> (2) Any claim other than a claim based on a contract with the personal representative or collector, *within six months after the claim arises. . . .*

G.S. 28A-19-3(b)(2) replaced former G.S. 28-113 when it was enacted in 1973. Taken alone, it bars all actions on claims that are

not presented to the administrator within the six-month time limitation. This result was tempered somewhat in 1977, with the amendment of G.S. 28A-14-3 which allowed creditors to maintain claims against the undistributed assets of the estate unless the personal representative has given them personal notice that their claims will be barred if not presented within the required six months. Subsection (i) was added to G.S. 28A-19-3 in 1979, specifically excluding insurance coverage from the six-month statute of limitation.

Defendant argues, because plaintiff's claim arose on 16 April 1976, between the time of the repeal of G.S. 28-113 and the enactment of G.S. 28A-19-3 in 1973, and the amendments of 1977 and 1979, that the administration of Robert Wilson's estate is not affected by the exclusions. He argues that G.S. 28A-19-3(b)(2) applies strictly as it existed on 16 April 1976, barring plaintiff's wrongful death claim as to all of the assets of the estate including undistributed assets. We disagree, having conclusively determined the issue in the case of *Force v. Sanderson*, 56 N.C. App. 423, 289 S.E. 2d 56 (1982).

We held in *Force v. Sanderson*, *id.*, that the failure of plaintiff to file a claim against a decedent's estate within the six months stipulated by G.S. 28A-19-3 did not bar recovery for wrongful death where plaintiff was seeking to collect damages out of an automobile liability insurance policy. The court, quoting *In Re Miles*, 262 N.C. 647, 138 S.E. 2d 487 (1964), a case which referred to G.S. 28-113, the antecedent of G.S. 28A-19-3, said that

By the provisions of G.S. 28-113, if a claim is not presented in six months, the representative is discharged as to assets paid. Even if this statute applies to a claim for unliquidated damages, which we do not concede, it would only bar petitioner's claim for damages for wrongful death as to assets paid out by appellant, and he could still assert his demand against undistributed assets of the estate and without cost against the administratrix c.t.a. of the Miles estate. *In re Estate of Bost*, 211 N.C. 440, 190 S.E. 756. In our opinion, failure of petitioner to file a claim for unliquidated damages with appellant does not bar his action, where he is seeking to recover damages for an alleged wrongful death of his intestate, and to collect it out of the automobile liability insurance policy issued to Miles, deceased.

*Force v. Sanderson,* supra at 426, 289 S.E. 2d at 58. *In Re Miles, id.,* was deemed controlling in *Force v. Sanderson,* supra, and we reaffirm its holding here. We do not subscribe to the view advanced by defendant that *Sanderson* was based exclusively upon the *Miles* decision, and that *Miles* is no longer authoritative since based upon repealed G.S. 28-113. On the contrary, the reasoning of *Miles,* acknowledged by the *Sanderson* Court to be based on the predecessor statute, was squarely and properly applied to G.S. 28A-19-3. We agree with plaintiff that the essence of *Miles,* which was that the failure to file a claim against the estate did not bar the wrongful death action because an automobile liability policy is an undistributed asset of the estate, survived the repeal of G.S. 28-113. The cases cited by defendant in his memorandum of additional authority for the proposition that *In Re Miles,* supra, is no longer authoritative, are either inapposite or unauthoritative.

Our resolution of this issue makes it unnecessary for purposes of the assignment to discuss the efficacy or timeliness of the letter sent by plaintiff's attorney on 27 April 1976 stating that he would be representing plaintiff in his wrongful death claim, as presentation of the claim. We decline to hold, however, that Great American Insurance Company was an agent for its insured for purposes of receiving presentation of the claim. Notice was given no one but the carrier. Plaintiff's first cross assignment is overruled.

[2]  It is next contended that plaintiff failed to obtain, within the period of two-year statute of limitation for wrongful death, proper jurisdiction over the estate of defendant's intestate because plaintiff named on the summons and complaint Charles E. Wilson, Sr., rather than Charles E. Wilson, Jr., as administrator of the estate. Plaintiff amended his complaint to change the name of the administrator to Charles E. Wilson, Jr., on 31 March 1978, pursuant to Rule 15 of the Rules of Civil Procedure. Defendant maintains, however, that there can be no relation back to the original complaint, as Rule 15(c) does not apply to an amendment that substitutes a new party for the party brought before the court by the original pleadings.

Defendant's argument is without merit. It is clear from the record that Charles E. Wilson, Jr., was properly served when his

mother accepted the documents at his residence even though the name of his father appeared on the complaint. Defendant was the only administrator of Wilson's estate. Indeed, defendant's father was deceased at the time of service. "Names are to designate person, and where the identity is certain a variance in the name is immaterial." *Patterson v. Walton*, 119 N.C. 500, 501, 26 S.E. 43, 43 (1896). Errors or defects in the pleadings not affecting substantial rights are to be disregarded. *Id.* If, as here, the effect of amendment is merely to correct the name of a person already in court, there is no prejudice. This is true even though the change relates back to the date of the original complaint. *Teague v. Asheboro Motor Co.*, 14 N.C. App. 736, 189 S.E. 2d 671 (1972). The amendment did not introduce a new defendant or change the cause of action. The assignment is, therefore, overruled.

[3] Defendant asserts by his third assignment that the court erred in allowing into evidence testimony from an economist as to the present monetary value of the future net income plaintiff's intestate could have earned had she not been killed. Defendant first contends that although plaintiff tendered Dr. J. Carl Poindexter, Professor of Economics and Business at North Carolina State University, as an expert, the court did not announce that he was an expert. Defendant then complains that Dr. Poindexter no more than speculated that plaintiff's intestate would have been gainfully employed for the remainder of her life; that he formulated his opinion regarding the present monetary value of future net earnings of an individual such as Shirley Ann Thorpe without any evidence of the amount of expenses she would have incurred; and that his opinion was based only upon an average individual in a class of persons like Miss Thorpe; and, therefore, his testimony was "based upon nothing more than speculation, conjecture and guesswork."

Dr. Poindexter testified in regard to his qualifications, and answered hypothetical questions without objection concerning his competency as an expert. "By admitting the evidence, the Court held in effect that the witness was an expert in the field covered by his testimony." *Apex Tire and Rubber Co. v. Merritt Tire Co., Inc.*, 270 N.C. 50, 54, 153 S.E. 2d 737, 740 (1967). Furthermore, Dr. Poindexter meticulously explained the assumptions, formulae, facts, and figures he used in determining the present monetary value of the future net income of plaintiff's intestate. He indicated

that he eliminated from his computation personal consumption expenses typical of an individual in the statistical category of which Miss Thorpe was a member.

It cannot be said that the judge erred in admitting this testimony. Expert testimony is practically the only evidence available to prove future earnings in a case such as the one at bar. Dr. Poindexter relied by necessity upon probabilities. His testimony, founded upon a large measure of certainty, gave the jury a fair framework within which it could reach a conclusion regarding the possible future earnings of plaintiff's intestate. "The present monetary value of the decedent to the persons entitled to receive the damages recovered will usually defy any precise mathematical computation." *Brown v. Moore*, 286 N.C. 664, 673, 213 S.E. 2d 342, 348 (1975). Dr. Poindexter's testimony was couched in terms of statistical probability, not possibility, and was some evidence indicating Shirley Ann Thorpe's earning capacity over a period of years. His testimony can only be said to give competent substantiation to the jury's award of damages, and was clearly admissible. Defendant's third assignment of error is overruled.

Defendant argues by his fourth and fifth assignments that the court committed prejudicial error when it allowed testimony regarding the present monetary value of the household services lost to Miss Thorpe's parents as a result of her untimely death. He says that the uncertainty about the number of years that Miss Thorpe would have remained in the home had she lived rendered Dr. Poindexter's testimony on this point so speculative as to render its admission into evidence erroneous. We disagree. Our discussion above pertaining to his third assignment is also applicable here.

Defendant also contends that Dr. Poindexter based his figures upon an average of 80 hours of housework per month, but that the evidence showed Miss Thorpe spent no more than 60 hours a month doing housework. Defendant misapprehends the evidence. Miss Thorpe's father testified that plaintiff's intestate lived at home and spent two to three hours at household chores each day. This amounts to 60 to 90 hours per month. There was also evidence to the effect that because her mother could not drive, Miss Thorpe, at some expense of time, transported her to

the places she needed to go. Dr. Poindexter correctly based his projections upon an average of 80 hours, the minimum hourly wage, and a flexible time frame of five to 20 years which gave the jury the opportunity to decide how long plaintiff's decedent might have remained in the home. The admission of the testimony was not error, nor did the trial judge err in charging the jury that the evidence tended to show that Miss Thorpe performed household services 60 to 90 hours a month.

[4] By his second and third cross assignments, plaintiff contends that the trial court erred by dismissing his claim for punitive damages and in granting defendant's motion in limine precluding plaintiff from making statements, asking questions and offering evidence regarding the claim for punitive damages. The general rule in this and other jurisdictions is that there can be no recovery for punitive damages against the personal representative of the deceased wrongdoer, however aggravated the circumstances may be. *McAdams v. Blue*, 3 N.C. App. 169, 164 S.E. 2d 490 (1968). The sole purpose of the allowance of punitive damages is to punish the wrongdoer. The death of the wrongdoer precludes his being punished by the assessment of punitive damages. By statute, G.S. 28A-18-2(b)(5), plaintiff could recover "Such punitive damages as the *decedent* could have recovered had he survived . . ." but we find no statutory provision allowing the recovery of punitive damages in a case where the wrongdoer does not survive. The punitive damage claim was properly dismissed, and the court correctly allowed defendant's motion in limine. Plaintiff's second and third cross assignments are overruled.

No error.

Judges CLARK and MARTIN (Harry C.) concur.