LINDA JACKSON, Administratrix of the Estate of MARY MAGDALENE JACKSON v. THE HOUSING AUTHORITY OF THE CITY OF HIGH POINT

No. 201A85

(Filed 2 April 1986)

**Landlord and Tenant § 8.3; Negligence § 50.1— punitive damages against municipality—recoverable**

　　The North Carolina Wrongful Death Act contains a statutory provision providing for the recovery of punitive damages from bodies politic, which includes municipal corporations, in that N.C.G.S. 28A-18-2 provides punitive

damages against a person who caused the death of the decedent through maliciousness, willful or wanton injury, or gross negligence, and N.C.G.S. 12-3 provides that the word "person" shall extend and be applied to bodies politic and corporate.

Justice MEYER dissenting.

Chief Justice BRANCH joins in the dissenting opinion.

APPEAL by the defendant as a matter of right pursuant to N.C.G.S. § 7A-30(2) from a decision of the Court of Appeals, 73 N.C. App. 363, 326 S.E. 2d 295 (1985), *Webb, J.*, dissenting, reversing dismissal of the plaintiff's claims for punitive damages in a wrongful death action.

*Kennedy, Kennedy, Kennedy and Kennedy, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellee.*

*Henson, Henson & Bayliss, by Jack B. Bayliss, Jr. and Perry C. Henson, for defendant-appellant.*

BILLINGS, Justice.

The plaintiff filed an action seeking recovery against the Housing Authority of the City of High Point for the death of Mary Magdalene Jackson. On 19 February 1978 Mrs. Jackson was found dead in her apartment in the Clara Cox Apartments, a low-income housing project owned and operated by the defendant. An autopsy report indicated that the cause of death was carbon monoxide poisoning. The plaintiff alleged that carbon monoxide backed up into the apartment because the chimney pipe from the natural gas heater was blocked by a bird's nest, a bird carcass and other debris. She based her right to recover on theories of negligence, strict liability for violation of N.C.G.S. § 42-42, breach of express and implied warranties, and breach of contract. Included in the negligence and breach of warranty claims were demands for punitive damages based upon allegations of wilful, wanton and gross negligence and intentional, malicious, wilful or wanton breach of warranty.

In its answer, the defendant raised, *inter alia*, the defense, pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6), that the complaint failed to state a claim upon which relief can be granted, and on 10 November 1982 it moved to dismiss the punitive damages claims. The matter came on for trial before Judge Washington at the 15

November 1982 Civil Jury Session of the Superior Court of Guilford County, High Point Division, at which time the trial judge allowed the Rule 12(b)(6) motion to dismiss the claims for punitive damages. At the close of the plaintiff's evidence, the trial court allowed the defendant's motions for directed verdict "on the plaintiff's claims for gross [sic] willful and wanton negligence, implied warranty, and express warranty." At the close of all the evidence, the trial court directed a verdict for the defendant on all claims.

On appeal to the Court of Appeals, that court reversed dismissal of plaintiff's claims based on negligence and implied warranty and of the claims for punitive damages. Judge Webb dissented from "that part of the majority opinion which holds it was error to dismiss plaintiff's claim for punitive damages." *Id.* at 374, 326 S.E. 2d at 301. He further said that, since in his opinion the evidence would not support a verdict of maliciousness, wilfulness, wantonness or gross negligence, the court did not have to decide whether punitive damages may be had in a wrongful death claim against a municipal corporation. The defendant filed notice of appeal and a petition for discretionary review of issues not raised by the dissent. The petition for discretionary review was denied.

In her brief and at oral argument, the plaintiff contended that, pursuant to Appellate Rule 16(b), only the question of sufficiency of the evidence to support an award of punitive damages is before this Court, and we should not consider whether under the law a claim for punitive damages may be maintained against a municipal corporation in a wrongful death action. The defendant contends that the question of sufficiency of the evidence was never before the Court of Appeals since the punitive damage claims had been dismissed pursuant to a Rule 12(b)(6) motion prior to trial, and that the trial judge's subsequent directed verdict on that portion of the case was surplusage. Thus, it contends, the Court of Appeals could only determine the legal sufficiency of the claim alleged in the complaint, and the dissent from "that part of the majority opinion which holds it was error to dismiss plaintiff's claim for punitive damages" necessarily was a dissent from reversal of the Rule 12(b)(6) dismissal.

While we concede that there has been some procedural confusion in this matter, it also is apparent that both parties appeared in this Court prepared to argue the question of the legal availability of a punitive damages claim against a municipal corporation in a wrongful death action. Thus, to the extent that there is technical merit to the plaintiff's contention, we have chosen to exercise our authority under Appellate Rule 2 to consider the question, since it was fully argued by both parties.

In *Long v. City of Charlotte*, 306 N.C. 187, 293 S.E. 2d 101 (1982) this Court held that "in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages" (*id.* at 208, 293 S.E. 2d at 115) regardless of whether the function of the municipality is governmental or proprietary.* In *Cox v. Kinston*, 217 N.C. 391, 8 S.E. 2d 252 (1940) and *Wells v. Housing Authority*, 213 N.C. 744, 197 S.E. 693 (1938) we held that a public housing authority is a municipal corporation. Thus, there is no question but that the defendant is immune from a claim for punitive damages in a common law negligence action.

The plaintiff contends that by specifically including punitive damages as an item of damages recoverable in a wrongful death action under N.C.G.S. § 28A-18-2, the General Assembly has provided a statutory exception to the common law prohibition on punitive damages against municipal corporations. We agree and affirm the decision of the Court of Appeals.

The plaintiff contends that "[a]lthough punitive damages are generally not recoverable against a municipal corporation, they are recoverable where expressly authorized by statute," and that since punitive damages are expressly authorized in N.C.G.S. § 28A-18-2, they may be recovered from a municipal corporation in an action under the statute. Thus, the plaintiff would have us construe the *Long* decision to mean that the exception to the common law prohibition exists whenever a statute authorizes punitive damages, not only when the statute expressly authorizes the recovery of punitive damages against a municipal corporation. We do not so read the *Long* decision.

---

* No question has been raised on this appeal about the general immunity of a municipal corporation from any liability in tort resulting from negligence in performing a governmental function, in the absence of waiver of immunity by the purchase of liability insurance. *See* N.C.G.S. § 160A-485.

The phrasing of the rule prohibiting punitive damages employed by the plaintiff is not the phrasing of this Court's holding in *Long*. Even if there is some ambiguity in the statement employed by the plaintiff, which is taken from an early portion of the Court's discussion in *Long* of the rule of law, the actual *holding* of the Court is not subject to a similar ambiguity. That holding is that "in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages." *Long v. City of Charlotte*, 306 N.C. at 208, 293 S.E. 2d at 115. This clearly states that the statutory provision must remove the *immunity of municipal corporations*, not merely provide for punitive damages, before the immunity of the common law is abrogated.

The plaintiff further contends that the immunity is statutorily abrogated when N.C.G.S. § 28A-18-2 is read in conjunction with N.C.G.S. § 12-3(6).

N.C.G.S. § 12-3 (1981), Rules for construction of statutes, provides *inter alia* that, "unless such construction would be inconsistent with the manifest intent of the General Assembly, . . . (6) . . . The word 'person' shall extend and be applied to bodies politic and corporate, as well as to individuals, unless the context clearly shows to the contrary."

Pertinent parts of N.C.G.S. § 28A-18-2 (1984) provide as follows:

(a) When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor, *the person* or corporation that would have been so liable, and his or their personal representatives or collectors, shall be liable to an action for damages . . . .

(b) Damages recoverable for death by wrongful act include:

. . .

(5) Such punitive damages as the decedent could have recovered had he survived, *and punitive damages for wrongfully causing the death of the decedent through*

> *maliciousness, wilful or wanton injury, or gross negligence;*
>
> . . .

[Emphasis added.]

We must assume that at the time the General Assembly enacted N.C.G.S. § 28A-18-2, it was aware of the rules of statutory construction contained in N.C.G.S. § 12-3(6), and that if it had intended a limitation on the word "person" at any place in N.C.G.S. § 28A-18-2, it would have so provided. In fact, no limitation is made, and there is no contention by the defendant that N.C.G.S. § 28A-18-2(a) does not apply to governmental entities such as municipal corporations. Therefore, a wrongful death action may be maintained against a municipal corporation.

Subdivision (b)(5) of N.C.G.S. § 28A-18-2 contains two provisions for punitive damages in a wrongful death action. The first of these is "[s]uch punitive damages as the decedent could have recovered had he survived." Because the deceased could not have recovered punitive damages in a common law tort action for personal injuries against the municipality if she had survived, this portion of the statute does not authorize the recovery of punitive damages against a municipal corporation in a statutory action for wrongful death. However, the statute goes further and provides additionally for "punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence."

By reading portions of N.C.G.S. § 12-3(6) into N.C.G.S. § 28A-18-2, we must construe that statute as follows:

> (a) When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor, the [body politic] or corporation that would have been so liable . . . shall be liable to an action for damages . . . .
>
> (b) Damages recoverable for death by wrongful act include:
>
> . . .

(5) . . . punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence.

Read in this fashion, the North Carolina Wrongful Death Act *does* contain a statutory provision providing for the recovery of punitive damages from bodies politic, which includes municipal corporations.

We recognize that the policy reasons set forth in the *Long* case for exempting municipal corporations from punitive damages claims may apply as well to actions for wrongful death as to actions for personal injury. However, the General Assembly has chosen to remove the immunity in case of wrongful death.

Because the claims for punitive damages were dismissed before trial, we do not consider whether the evidence offered at trial was sufficient to justify submission to the jury of the punitive damages claims. Although the plaintiff has not identified evidence which she would have introduced had the claims not been dismissed, we cannot assume that the dismissal which removed those issues from the trial did not have an effect upon the plaintiff's presentation of evidence.

The decision of the Court of Appeals reversing the dismissal of the plaintiff's claim for punitive damages is affirmed.

Affirmed.

Justice MEYER dissenting.

I respectfully dissent. Two grievous faults are apparent in the majority opinion. First, it does violence to the Wrongful Death Act by allowing recovery for a species of damages in a situation where they could not have been recovered by the deceased had she lived. Second, our cases, including our recent decision in *Long v. City of Charlotte*, 306 N.C. 187, 293 S.E. 2d 101 (1982), prohibit recovery of punitive damages against a municipality "unless *expressly* authorized by statute," and the majority has allowed such a recovery by what is, at best, a mere statutory *implication*.

The basic premise of N.C.G.S. Chapter 28A is that there can be a recovery for wrongful death *only* where the injured person, had he lived, could have brought an action for such damages.

> (a) When the death of a person is caused by a wrongful act, neglect or default of another, *such as would, if the injured person had lived, have entitled him to an action for damages therefor*, the person or corporation that would have been so liable, and his or their personal representatives or collectors, shall be liable to an action for damages . . . .

N.C.G.S. § 28A-18-2 (1984 & Cum. Supp. 1985) (emphasis added).

It is abundantly clear from *Long* that, had the deceased here lived, she could not have recovered punitive damages from the defendant Housing Authority in a common law negligence action for personal injuries. Under the majority's holding in this case, punitive damages are allowed *even though they could not have been recovered by the deceased had she lived*. I find very strange indeed the majority's reasoning that, under the facts of this case, the Wrongful Death Act provides one species of punitive damages for which a municipality is not liable because the deceased could not have recovered them had she lived and another for which the municipality *is* liable because the act "provides additionally for" such damages, even if the decedent could not have recovered them had she lived, where the claim is based on maliciousness, willful or wanton injury, or gross negligence. Having conceded that the personal representative cannot recover the first species of punitive damages (those which the decedent might have recovered had she lived) from the municipality because of its immunity, the majority now reasons that the personal representative *may* recover the second species of punitive damages (those arising from the fact of death by means specified in the statute) from the municipality because the decedent died rather than lived. In other words, the majority reasons that the municipality is immune from one species of punitive damages, but not the other. The majority finds "express" statutory authority for this result by reading the definitions section of N.C.G.S. Chapter 12 into the punitive damages section of the Wrongful Death Act, N.C.G.S. § 28A-18-2(b)(5).

The rule in this state, as well as in an overwhelming majority of jurisdictions (and, indeed, the rule may now be universal), is "that no punitive damages are allowed against a municipal cor-

poration unless *expressly* authorized by statute." *Long v. City of Charlotte*, 306 N.C. at 207, 293 S.E. 2d at 114 (emphasis added). *See also Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 260 n. 21, 69 L.Ed. 2d 616, 628 n. 21 (1981); *Rieser v. District of Columbia*, 563 F. 2d 462, 481 (D.C. Cir. 1977), *modif. on other grounds*, 580 F. 2d 647 (D.C. Cir. 1978); *Smith v. District of Columbia*, 336 A. 2d 831, 832 (D.C. App. 1975); *Fisher v. City of Miami*, 172 So. 2d 455, 457 (Fla. 1965); *Foss v. Maine Turnpike Authority*, 309 A. 2d 339, 345-46 (Me. 1973); *Desforge v. City of West Saint Paul*, 231 Minn. 205, 208, 42 N.W. 2d 633, 634 (1950); *Chappell v. City of Springfield*, 423 S.W. 2d 810, 812-15 (Mo. 1968); *Brown v. Village of Deming*, 56 N.M. 302, 316, 243 P. 2d 609, 618 (1952); *Ranells v. City of Cleveland*, 41 Ohio St. 2d 1, 6-8, 321 N.E. 2d 885, 888-89 (1975); *Township of Bensalem v. Press*, --- Pa. Commw. ---, ---, 501 A. 2d 331, 337 (1985); 18 E. McQuillin, The Law of Municipal Corporations § 53.18a (3d ed. 1984); 4 C. D. Sands & M. Libonati, Local Government Law § 27.19 (1985); Hines, *Municipal Liability for Exemplary Damages*, 15 Clev-Mar L. Rev. 304, 304 (1966); Annot., *Recovery of Exemplary or Punitive Damages From Municipal Corporation*, 1 A.L.R. 4th 448 (1980); 57 Am. Jur. 2d, Municipal, Etc., Tort Liability §§ 318-322 (1971 & Cum. Supp. 1985).

My research has disclosed only two states that have, at some time in the past, allowed the recovery of punitive damages against a municipality in the face of a defense of immunity — Iowa and New York. Those holdings in both states have now been abrogated by later case law or statute. In *Young v. City of Des Moines*, 262 N.W. 2d 612 (Iowa 1978), the Iowa Supreme Court rejected the various policy arguments militating against the assessment of punitive damages against a municipality and opined that permitting such a recovery would result in greater care being taken in the selection and training of municipal employees. In 1982, however, the Iowa Code was amended to expressly exempt municipalities from liability for punitive damages. Iowa Code Ann. § 613A-4(5) (Cum. Supp. 1985).

The New York position had long been uncertain as a result of inconsistent lower court decisions, *Sharapata v. Town of Islip*, 82 A.D. 2d 350, 441 N.Y.S. 2d 275, *aff'd*, 456 N.Y. 2d 332, 452 N.Y.S. 2d 347, 437 N.E. 2d 1104 (1982), but punitive damages have been allowed in that state. *E.g., Hayes v. State*, 80 Misc. 2d 498, 363 N.Y.S. 2d 986 (1975), *rev'd on other grounds and punitive damages*

*issue not reached,* 50 A.D. 2d 693, 376 N.Y.S. 2d 647, *aff'd per curiam and punitive damages issue not reached,* 40 N.Y. 2d 1044, 392 N.Y.S. 2d 282, 360 N.E. 2d 959 (1976). However, the New York Court of Appeals definitively held in 1982 that "the waiver of sovereign immunity effected by section[s] 8 of the Court of Claims Act does not permit punitive damages to be assessed against the State or its political subdivisions." *Sharapata v. Town of Islip,* 56 N.Y. 2d at 334, 452 N.Y.S. 2d at 348, 437 N.E. 2d at 1105.

Additionally, the federal district court, applying Pennsylvania law in *Hennigan v. Atlantic Refining Co.,* 282 F. Supp. 667 (E.D. Pa. 1967), *aff'd,* 400 F. 2d 857 (3d Cir. 1968), *cert. denied,* 395 U.S. 904, 23 L.Ed. 2d 216 (1969), held that the city could be liable for punitive damages in a wrongful death action in light of a city ordinance waiving immunity from tort liability even for governmental functions and in light of recent Pennsylvania Supreme Court decisions abrogating immunity for charitable institutions. However, when squarely faced with the issue, the Pennsylvania Commonwealth Court rejected the "legal argument that waiver of sovereign immunity implicitly permit[s] assessment of punitive damages against a municipality" and clearly aligned itself with the "better reasoned" majority view which requires specific statutory authorization. *Township of Bensalem v. Press,* --- Pa. Commw. ---, ---, 501 A. 2d 331, 338.

The rule reiterated in *Long* is founded upon strong public policy considerations which were stressed in our opinion in that case:

In *Newport v. Facts Concerts, Inc.,* 453 U.S. 247, 69 L.Ed. 2d 616 (1981), the United States Supreme Court held that a municipality is immune from punitive damages under 42 U.S.C. § 1983. In that case the Court examined at length the historical and public policy considerations of allowing punitive damages against municipalities and other governmental agencies and concluded that neither consideration supports exposing a municipality to punitive damages for the bad faith actions of its officials.

Punitive damages by definition are not intended to compensate the injured party, but rather to *punish* the tortfeasor whose wrongful action was intentional or malicious, and to *deter* him and others from similar ex-

treme conduct. (Citations omitted.) Regarding retribu-
tion, it remains true that an award of punitive damages
against a municipality 'punishes' only the taxpayers, who
took no part in the commission of the tort . . . . Indeed,
punitive damages imposed on a municipality are in effect
a windfall to a fully compensated plaintiff, and are likely
accompanied by an increase in taxes or a reduction of
public services for the citizens footing the bill. Neither
reason nor justice suggests that such retribution should
be visited upon the shoulders of blameless or unknowing
taxpayers (emphasis added).

453 U.S. at 266-67; 69 L.Ed. 2d at 632.

Ordinarily it is the wrongdoer himself who is made to
suffer for his conduct by the imposition of punitive dam-
ages — here it is the governmental entity itself. The retribu-
tive purpose is not significantly advanced, if it is advanced at
all, by exposing municipalities to punitive damages.

With regard to the deterrent aspect, the Court noted
that it is far from clear that municipal officials, including
those at the policymaking level, would be deterred from
wrongdoing by the threat of large punitive awards against
the wealth of their municipality and its taxpayers. This is
particularly true in the absence of a law making indemnifica-
tion available to the municipality. Likewise, there is no
reason to suppose that corrective action such as discharge of
the offending officials who were appointed or the removal of
those who were elected will occur simply because punitive
damages are awarded against the municipality. 453 U.S. at
268-69; 69 L.Ed. 2d at 632-33.

We believe that public policy considerations[10] mitigating
against allowing assessment of punitive damages are compel-
ling and are applicable to the actions of municipal corpora-
tions without regard to whether the function is governmental
or proprietary. We hold that in the absence of statutory pro-
visions to the contrary, municipal corporations are immune
from punitive damages. The trial court did not err in striking
those allegations of the complaint alleging punitive damages.

10. With regard to public policy considerations, the United States
Supreme Court in *Newport* sounded an alarm in view of the anticipated effect
of one of its recent opinions broadening the liability of municipalities:

> Finally, although the benefits associated with awarding punitive damages against municipalities under § 1983 are of doubtful character, the costs may be very real. In light of the Court's decision last Term in *Main [sic] v. Thiboutot*, 448 U.S. 1, 65 L.Ed. 2d 555, 100 S.Ct. 2502 (1980), the § 1983 damages remedy may now be available for violations of federal statutory as well as constitutional law. But cf. *Middlesex Cty. Sewerage Authority v. National Sea Clammers Assn.*, [453] U.S. [1], 69 L.Ed. 2d 435, 101 S.Ct. [2615] (1981). Under this expanded liability, municipalities and other units of state and local government face the possibility of having to assure compensation for persons harmed by abuses of governmental authority covering a large range of activity in everyday life. To add the burden of exposure for the malicious conduct of individual government employees may create [a] serious risk to the financial integrity of these governmental entities.

453 U.S. at 270, 69 L.Ed. 2d at 634.

*Long v. City of Charlotte*, 306 N.C. at 207-08 & n. 10, 293 S.E. 2d at 114 & n. 10 (emphasis in original; citations omitted in original).

Requiring the taxpayers to respond with punitive damages in this case will serve no retributive or deterrent purpose. In an analogous situation, the Court of Appeals, in *Thorpe v. Wilson*, 58 N.C. App. 292, 293 S.E. 2d 675 (1982) (Chief Judge Morris writing), said this:

> The general rule in this and other jurisdictions is that there can be no recovery for punitive damages against the personal representative of the deceased wrongdoer, however aggravated the circumstances may be. *McAdams v. Blue*, 3 N.C. App. 169, 164 S.E. 2d 490 (1968). The sole purpose of the allowance of punitive damages is to punish the wrongdoer. The death of the wrongdoer precludes his being punished by the assessment of punitive damages. By statute, G.S. 28A-18-2(b)(5), plaintiff could recover "Such punitive damages as the *decedent* could have recovered had he survived . . ." but we find no statutory provision allowing the recovery of punitive damages in a case where the wrongdoer does not survive. The punitive damage claim was properly dismissed
> . . . .

58 N.C. App. at 299, 293 S.E. 2d at 680 (emphasis in original).

The compelling public policy considerations underlying immunity from punitive damages by municipal corporations may not and should not be summarily abrogated under the guise of the kind of statutory construction employed by the majority here. *Cf.*

*Newport v. Facts Concerts, Inc.*, 453 U.S. 247, 69 L.Ed. 2d 616. The majority has correctly stated that the holding in *Long* contemplates that, in order for a municipality to be liable for punitive damages, there must exist a "statutory provision [which] remove[s] the *immunity of municipal corporations*, not [one which] merely provide[s] for punitive damages." Yet, despite this clear recognition of the rule, the majority has reached its conclusion by the simple tactic of reading the words "body politic" into a statutory provision which "merely provides for punitive damages." Nowhere in N.C.G.S. § 28A-18-2 does the legislature "remove the immunity of municipal corporations" for punitive damages.

It is manifestly unreasonable to suppose that *Long* stands for the proposition that substituting the words "body politic" for the word "person" in a statutory provision *merely providing for punitive damages* amounts to a statutory provision *expressly* removing the immunity of municipal corporations for such damages. Such a tortured construction cannot have been intended by the General Assembly and was not contemplated by our opinion in *Long*. *Long* requires *express* statutory authority before punitive damages may be recovered against a municipal corporation. Our General Assembly knows how to expressly remove immunity from municipal corporations, as evidenced by N.C.G.S. § 160A-485 (". . . no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance"). Had our legislature intended to authorize the recovery of punitive damages in this situation, it could have done so by including "municipal corporations" when it provided "the person or corporation" language in the wrongful death statute. The reasoning of the majority in its analysis that the definition of person in the remote N.C.G.S. § 12-3(6) should be read into the wrongful death provision of N.C.G.S. Chapter 28A is strained and untenable. It is inescapable that the Wrongful Death Act contains no "express statutory authority" for recovery of punitive damages against municipalities as required by *Long*. It is only by reading the statutory definitions in N.C.G.S. Chapter 12 into N.C.G.S. Chapter 28A that there is even a statutory *implication* that recovery of punitive damages may be had against a body politic. This is not the kind of "express" statutory authority contemplated by this Court in *Long*. I consider it not only

unnecessary, but improper, for this Court to judicially impose liability where none is imposed by the body responsible for abolition or modification of such immunity. *See Steelman v. City of New Bern*, 279 N.C. 589, 595, 184 S.E. 2d 239, 243 (1971) ("any further modification or the repeal of the doctrine of sovereign immunity should come from the General Assembly, not this Court").

Our state and municipal officials must presume that the majority's decision will allow recovery of punitive damages for wrongful *death* (second species only) to all proprietary functions and, to the extent covered by insurance, to governmental functions unless statutory law otherwise prohibits it. The consequences which flow from the majority opinion may be extremely serious for the taxpayers because of the exposure it creates for all units of state and local government. A very large jury verdict awarding punitive damages for a wrongful death against a small municipality may indeed prove to be devastating. I reiterate what the United States Supreme Court said, in a somewhat different context, in *Newport*:

> Under this expanded liability, municipalities and other units of state and local government face the possibility of having to assure compensation for persons harmed by abuses of governmental authority covering a large range of activity in everyday life. To add the burden of exposure for the malicious conduct of individual government employees may create a serious risk to the financial integrity of these governmental entities.
>
> The Court has remarked elsewhere on the broad discretion traditionally accorded to juries in assessing the amount of punitive damages. . . . Because evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded, the unlimited taxing power of a municipality may have a prejudicial impact on the jury, in effect encouraging it to impose a sizable award. The impact of such a windfall recovery is likely to be both unpredictable and, at times, substantial, and we are sensitive to the possible strain on local treasuries and therefore on services available to the public at large.

*Newport*, 453 U.S. at 270-71, 69 L.Ed. 2d at 634 (citations omitted).

I vote to reverse the decision of the Court of Appeals and hold that the clear mandate of *Long v. City of Charlotte*, 306 N.C. 187, 293 S.E. 2d 101, disallows a claim for punitive damages against the municipal corporation in this case.

Chief Justice BRANCH joins in this dissenting opinion.