ANNETTE EVANS, as Guardian *Ad Litem* for TYRONE HORTON v. HOUSING AUTHORITY OF THE CITY OF RALEIGH, NORTH CAROLINA

No. 216PA03

(Filed 7 October 2004)

**1. Immunity— governmental—public housing authority—governmental function**

A public housing authority created and operated pursuant to N.C.G.S. Ch. 157, like other municipal corporations, is entitled to immunity in tort and contract for acts undertaken by its agents and employees in the exercise of its governmental functions, but not for any proprietary functions it may undertake.

**2. Immunity— governmental—public housing authority**

A public housing authority performs a governmental function in providing housing for low and moderate income families and is entitled to rely on the doctrine of governmental immunity.

**3. Immunity— governmental—public housing authority—waiver—purchase of liability insurance**

A Chapter 157 housing authority has statutory authority to accept liability for its governmental functions by the purchase of insurance, and thus, can waive its sovereign immunity.

**4. Immunity— governmental—public housing authority—remand of order denying motion to dismiss**

The trial court's order denying defendant public housing authority's motion to dismiss plaintiff's claims arising from the use of lead paint on grounds of sovereign or governmental immunity is remanded, because: (1) the order did not contain findings of fact or conclusions of law; and (2) our Supreme Court is unable to discern whether the ruling below was premised upon defendant's insurance coverage.

On discretionary review pursuant to N.C.G.S. § 7A-31, prior to a determination by the Court of Appeals, of an order entered 9 January 2003 by Judge Narley L. Cashwell in Superior Court, Wake County. Heard in the Supreme Court 13 October 2003.

*Stubbs & Perdue, P.A., by J. Michael Malone, for plaintiff-appellee.*

*Francis & Austin, PLLC, by Charles T. Francis and Alan D. Woodlief, Jr., for defendant-appellant.*

*Ward and Smith, P.A., by David L. Ward, Jr., for Eastern Carolina Regional Housing Authority, Mid-East Regional Housing Authority, and Washington Housing Authority, amici curiae.*

EDMUNDS, Justice.

Plaintiff Tyrone Horton was born on 3 June 1992. On 18 June 2002, through his guardian *ad litem*, plaintiff filed the instant action in Wake County Superior Court. According to the allegations in the Complaint, defendant Housing Authority of the City of Raleigh, North Carolina owned and operated the property where plaintiff resided with his family from his birth until on or about 1 February 1996. The paint present in defendant's property was manufactured and sold before 1978 and contained greater than 0.5% lead by weight. When plaintiff's family leased the premises from defendant, paint dust and chips found at the home raised the lead hazard to levels exceeding the

standards in the North Carolina Administrative Code and the North Carolina General Statutes. Although defendant promised to repair the premises, no such repairs were undertaken. Plaintiff suffered lead poisoning, resulting in severe injuries.

After setting out these allegations in his Complaint, plaintiff pled numerous causes of action: (1) violation of the North Carolina Residential Rental Agreements Act, N.C.G.S. §§ 42-38 to -46; (2) breach of the implied warranty of habitability; (3) breach of the express warranty that the premises would be maintained in a fit and habitable condition; (4) negligence; (5) negligence *per se*; and (6) unfair and deceptive trade practices. Plaintiff also sought punitive damages.

On 19 August 2002, defendant filed a motion to dismiss. In its motion, defendant claimed that, pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure, the court did not have personal jurisdiction over defendant. In the alternative, defendant contended that, pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure, the court did not have subject matter jurisdiction over the case. Specifically, defendant alleged that it was organized in accordance with Chapter 157 of the North Carolina General Statutes, was invested with a governmental function, and was shielded from liability by sovereign or governmental immunity. Defendant further alleged that, to the extent it could waive its immunity pursuant to N.C.G.S. § 160A-485, it had not purchased insurance or participated in a risk retention pool that provided coverage for the claims asserted by plaintiff.

Defendant's motion was heard during the 16 December 2002 term of Wake County Superior Court. After considering the arguments of counsel and reviewing the pleadings and various documents and exhibits submitted by the parties, the trial court determined that "[d]efendant's Motion to Dismiss based on sovereign or governmental immunity should be denied." On 5 February 2003, defendant filed a notice of appeal to the North Carolina Court of Appeals. *See Mabrey v. Smith*, 144 N.C. App. 119, 121, 548 S.E.2d 183, 185 (denial of motion to dismiss based on governmental immunity immediately appealable), *disc. rev. denied*, 354 N.C. 219, 554 S.E.2d 340 (2001). On 22 April 2003, defendant petitioned for discretionary review by this Court prior to determination by the Court of Appeals, and on 1 May 2003, plaintiff filed a response asking that defendant's petition be allowed, with modifications. On 21 August 2003, this Court allowed defendant's petition as submitted.

EVANS v. HOUSING AUTH. OF CITY OF RALEIGH

[359 N.C. 50 (2004)]

**[1]** In reviewing the action of the trial court, we must first consider whether defendant is entitled to any form of immunity. "Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity. Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) (citations omitted). These immunities do not apply uniformly. The State's sovereign immunity applies to both its governmental and proprietary functions, while the more limited governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions. *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 533, 299 S.E.2d 618, 624 (1983); *Orange Cty. v. Heath*, 282 N.C. 292, 294, 192 S.E.2d 308, 309-10 (1972).

A public housing authority created and operated pursuant to Chapter 157 of the North Carolina General Statutes is a municipal corporation. *See Jackson v. Hous. Auth. of High Point*, 316 N.C. 259, 262, 341 S.E.2d 523, 525 (1986) (citing *Cox v. City of Kinston*, 217 N.C. 391, 8 S.E.2d 252 (1940); *Wells v. Hous. Auth. of Wilmington*, 213 N.C. 744, 197 S.E. 693 (1938)). While a municipal corporation has immunity for acts committed in its governmental capacity, *see Orange Cty.*, 282 N.C. at 294, 192 S.E.2d at 309-10, "when a municipal corporation undertakes functions beyond its governmental and police powers and engages in business in order to render a public service for the benefit of the community for a profit, it becomes subject to liability for contract and in tort as in case of private corporations," *Town of Grimesland v. City of Washington*, 234 N.C. 117, 123, 66 S.E.2d 794, 798 (1951). Although defendant housing authority is somewhat different from a city or a county, in that it exists for the specific purpose of creating and maintaining affordable, safe, and sanitary housing for low and moderate income renters, we see no reason why it should be treated differently from other municipal corporations as to immunity issues. Accordingly, defendant, like other municipal corporations, is entitled to immunity in tort and contract for acts undertaken by its agents and employees in the exercise of its governmental functions, but not for any proprietary functions it may undertake.

**[2]** We next consider whether defendant performs a governmental or proprietary function in providing housing for low and moderate income families. This Court has defined the difference between these functions as follows:

Any activity of the municipality which is discretionary, politi-cal, legislative or public in nature and performed for the public good in behalf of the State, rather than for itself, comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary.

*Millar v. Town of Wilson*, 222 N.C. 340, 341, 23 S.E.2d 42, 44 (1942). We have provided various tests for determining into which category a particular activity falls, but have consistently recognized one guiding principle: "[G]enerally speaking, the distinction is this: If the under-taking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'pri-vate' when any corporation, individual, or group of individuals could do the same thing." *Britt v. City of Wilmington*, 236 N.C. 446, 451, 73 S.E.2d 289, 293 (1952). The difficulties of applying this principle have been noted. *See, e.g., Sides v. Cabarrus Mem'l Hosp., Inc.*, 287 N.C. 14, 22, 213 S.E.2d 297, 302 (1975); *Koontz v. City of Winston-Salem*, 280 N.C. 513, 528, 186 S.E.2d 897, 907 (1972); *Hare v. Butler*, 99 N.C. App. 693, 698, 394 S.E.2d 231, 235, *disc. rev. denied*, 327 N.C. 634, 399 S.E.2d 121 (1990).

Plaintiff argues that operation of a housing authority is a propri-etary function, citing the Court of Appeals opinion in *Jackson v. Hous. Auth. of High Point*, 73 N.C. App. 363, 326 S.E.2d 295 (1985). Therefore, plaintiff contends, because the Housing Authorities Law does not specifically provide for immunity, a housing authority is liable to the same extent as a private individual or a corporation. However, when this Court affirmed *Jackson*, we considered only lia-bility for punitive damages and noted that "[n]o question has been raised on this appeal about the general immunity of a municipal cor-poration from any liability in tort resulting from negligence in per-forming a governmental function, in the absence of waiver of immu-nity by the purchase of liability insurance." 316 N.C. at 262, 341 S.E.2d at 525. Accordingly, the language in the Court of Appeals opinion upon which plaintiff relies is not binding on this Court.

One of the tests that courts have employed to differentiate between governmental and proprietary functions is whether or not a fee is charged for the service. A fee suggests that an activity is pro-prietary, *see Sides*, 287 N.C. at 22-23, 213 S.E.2d at 302-03, particularly if a profit results, *see Schmidt v. Breeden*, 134 N.C. App. 248, 255, 517 S.E.2d 171, 174-75 (1999). However, a housing authority operating

pursuant to Chapter 157 may charge rent to low and moderate income tenants only "at rentals within the financial reach of such persons." N.C.G.S. § 157-29(b)(2) (2003); *see also id.* § 157-9.1 (2003). In addition, "[n]o housing authority may construct or operate its housing projects so as to provide revenues for other activities of the city." *Id.* § 157-29(a). According to the record, defendant operates at a net loss unless operating subsidies from the federal government are considered. Therefore, we do not believe defendant's charging of rent to tenants is dispositive.

We find that the language of the Housing Authorities Law, *see id.* §§ 157-1 to -39.87 (2003), when considered with the prior holdings of this Court, provides useful direction. In affirming the constitutionality of the progenitor of the current Housing Authorities Law, *see id.* § 157-30 (2003), we determined that the original Act invested a housing authority with a governmental function. *Wells,* 213 N.C. at 749, 197 S.E. at 696-97. This Court has never retreated from that holding. *Cox,* 217 N.C. at 394, 8 S.E.2d at 255 (The holding in *Wells* was "couched in language as clear and concise as we could employ."). *See also Martin v. N.C. Hous. Corp.,* 277 N.C. 29, 45, 175 S.E.2d 665, 674 (1970); *cf. Carter v. City of Greensboro,* 249 N.C. 328, 333, 106 S.E.2d 564, 568-69 (1959) (City housing project that was not created and operated pursuant to Chapter 157 and that generated "substantial financial returns" for the city engaged in a proprietary function.). In enacting the current Housing Authorities Law, the General Assembly declared

> that unsanitary or unsafe dwelling accommodations exist in urban and rural areas throughout the State . . . ; that these conditions cannot be remedied by the ordinary operation of private enterprise; that the . . . providing of safe and sanitary dwelling accommodations for persons of low income are *public uses and purposes for which public money may be spent* and private property acquired; . . . and that the necessity for the provisions hereinafter enacted is hereby declared as a matter of legislative determination to be in the public interest.

N.C.G.S. § 157-2(a) (2003) (emphasis added). This statutory indication that the provision of low and moderate income housing is a governmental function is consistent both with our determination in *Millar* that an "activity of the municipality which is . . . public in nature and performed for the public good in behalf of the State . . . comes within the class of governmental functions," 222 N.C. at 341, 23

S.E.2d at 44, and with the earlier holdings cited above. Accordingly, we reaffirm that a housing authority organized in accordance with the provisions of Chapter 157 of the North Carolina General Statutes provides a governmental function and is entitled to rely on the doctrine of governmental immunity.

**[3]** We must next determine whether defendant waived its immunity. Plaintiff argues that, pursuant to N.C.G.S. § 160A-485(a), defendant's purchase of liability insurance constituted a waiver. That statute provides that "[a]ny city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance." N.C.G.S. § 160A-485(a) (2003). However, "[t]he term 'city' does not include counties or municipal corporations organized for a special purpose." *Id.* § 160A-1(2) (2003). As noted above, defendant housing authority was organized for the special purpose of providing housing for low and moderate income renters. *See also Carolinas Chapter NECA, Inc. v. Hous. Auth. of Charlotte,* 29 N.C. App. 755, 756, 225 S.E.2d 653, 653-54 (1976). Accordingly, the provisions of Chapter 160A of the North Carolina General Statutes, and specifically section 160A-485(a), do not control whether or not defendant had legal capacity to waive its immunity by purchasing liability insurance.

Turning instead to the statute setting out the powers of a housing authority, we observe that such an authority has the statutory power "to sue and be sued." N.C.G.S. § 157-9(a) (2003). We have held that this power, standing alone, does not necessarily act as a waiver of immunity. *Guthrie,* 307 N.C. at 537-38, 299 S.E.2d at 627. In that case, we concluded that "[t]he State of North Carolina ha[d] not given its consent for the Ports Authority to be sued in the courts of the State," *id.* at 538, 299 S.E.2d at 627, despite the Ports Authority's statutory power to "sue and be sued," N.C.G.S. § 143B-454(a)(1) (2003). We explained that

[s]tatutory authority to "sue or be sued" is not always construed as an express waiver of sovereign immunity and is not dispositive of the immunity defense when suit is brought against an agency of the State. . . .

We conclude that the language of the State Tort Claims Act and G.S. § 143-454(1), vesting the Ports Authority with authority to sue or be sued, when read together, evidence a legislative intent that the Authority be authorized to sue as plaintiff in its

EVANS v. HOUSING AUTH. OF CITY OF RALEIGH

[359 N.C. 50 (2004)]

own name in the courts of the State but contemplates that all tort claims against the Authority for money damages will be pursued under the State Tort Claims Act.[1]

*Guthrie*, 307 N.C. at 538, 299 S.E.2d at 627 (citations omitted). However, unlike the Ports Authority, *see* N.C.G.S. § 143B-454 (2003); *Guthrie*, 307 N.C. at 529-32, 299 S.E.2d at 622-23, a housing authority is given the additional authority "to insure or provide for the insurance of the property or operations of the authority against such risks as the authority may deem advisable." N.C.G.S. § 157-9(a). When these provisions of N.C.G.S. § 157-9(a) are read together, we believe they establish that the General Assembly foresaw the possibility that tenants would sue a housing authority in tort and intended that housing authorities have the power to waive their tort immunity through the purchase of liability insurance. Accordingly, we hold that a Chapter 157 housing authority has statutory authority to accept liability for its governmental functions by the purchase of insurance.

**[4]** The final issue is whether the insurance purchased by defendant applied to the injuries alleged by plaintiff. Generally, a municipality waives its immunity only to the extent of the insurance obtained. *Seibold v. City of Kinston*, 268 N.C. 615, 621, 151 S.E.2d 654, 658 (1966); *see also* N.C.G.S. § 153A-435(a) (2003) (purchase of liability insurance waives county's governmental immunity to the extent of the coverage); N.C.G.S. § 160A-485(a) (city's waiver of immunity from civil liability in tort by purchase of insurance limited to extent city indemnified by insurance contract). Again, we see no reason why this principle should not apply to other municipal corporations, including defendant. Defendant argues that specific terms in its insurance policies excluded coverage for any harm to residents arising from the use of lead paint. Because the trial court's order denying defendant's motion to dismiss on grounds of sovereign or governmental immunity did not contain findings of fact or conclusions of law, *see* N.C.G.S. § 1A-1, Rule 52(a)(2) (2003), we are unable to discern whether the ruling below was premised upon defendant's insurance coverage. Accordingly, we remand to the trial court for a determination of whether defendant waived its immunity as to the claims asserted by plaintiff.

---

1. We do not believe that any difference between the phrases "sue *and* be sued," found in both N.C.G.S. § 143-454(a)(1) and N.C.G.S. § 157-9, and "sue *or* be sued," as used in *Guthrie*, is significant to the case at bar.

Remanded for further proceedings not inconsistent with this opinion.

REMANDED.